**UNITED STATES of America**

v.

**Mamas KEHYAIAN, Defendant.**

United States District Court
S. D. New York.
May 22, 1962.

written statements obtained from him after 10:00 P.M. of the evening on which he was arrested. A hearing was held on the motion before this Court on May 10, 1962, and the Court finds the following facts:

The defendant was arrested on Friday evening March 30, 1962 at approximately 6:15 P.M., pursuant to a warrant issued on a complaint charging the defendant with possession of counterfeit obligations of the United States. The arrest was made in the lobby of a midtown hotel and defendant was alone when taken into custody. The arresting officer informed him at that time that he was charged with counterfeiting. He was then transported in a government vehicle to the Secret Service headquarters at 90 Church Street where he was put through the "booking procedure," which included fingerprinting, photographing and taking a short personal history of the defendant. The booking was completed at approximately 7:15 P.M.

Defendant was interrogated at Secret Service headquarters intermittently until approximately 10:00 P.M. He was questioned by several agents individually and in concert, but he continuously denied his guilt or involvement in the matter up to that time. He also testified that he was threatened, coerced and even struck during the course of his interrogation on Friday night. The allegation that he was struck was denied by the Special Agents who testified at the hearing. The Court cannot find as a fact that he was struck.

■ Defendant in his motion concedes, in effect, that oral statements made up to 10:00 P.M. should not be suppressed. At 10:00 P.M. defendant was taken by the Special Agents to his place of business at 20th Street in Manhattan. The defendant claims that he was forced to go along. The Special Agents say that he gave his permission and accompanied them voluntarily. The Court finds that this was done volun-

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for United States; Albert J. Gaynor, Asst. U. S. Atty., of counsel.

Francheschini & Root, New York City, for defendant; Arthur Goldstein, New York City, of counsel.

DAWSON, District Judge.

This is a motion by defendant for an order suppressing the use of any oral or

tarily and that the defendant consented to a search of the premises. Any statements made by the defendant at that time, or any evidence gathered at the scene, are properly admissible at the trial. After a search of these premises, at approximately 12:00 midnight, the defendant was taken to the Federal House of Detention at West Street, where he spent the night.

The next morning defendant was awakened at 7:00 A.M. and "checked out" of the Federal House of Detention, this process taking until 11:00 A.M. The Special Agents then took the defendant in a government vehicle to the Secret Service headquarters at 90 Church Street, where questioning resumed. At approximately 12:00 noon, after forty-five minutes of questioning, the defendant made certain oral statements in the form of affirmative answers to questions put to him by Special Agent Deckhart. These were transcribed and presented to the defendant for his signature. He signed the original copy, then crossed out his signature because, he asserted at the hearing, it was not an accurate reflection of the oral admissions he had made to the agent. He claims that after he crossed out his signature he was threatened and finally signed the statement a second time. He was then taken to the Federal Court House where he was questioned briefly by an Assistant United States Attorney and finally arraigned before Judge Weinfeld at 1:30 P.M.

The facts in this case require that the written statement and any oral statements obtained from the petitioner on Saturday morning prior to his arraignment be suppressed. The basic philosophy underlying Rules 5(a) and 5(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.[1] was clearly propounded by the Supreme Court in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), developing its earlier decision in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1942):

> "Since such unwarranted detention led to tempting utilization of intensive interrogation, easily gliding into the evils of 'the third degree,' the Court held that police detention of defendants beyond the time when a committing magistrate was readily accessible constituted 'willful disobedience of law.' In order adequately to enforce the congressional requirement of prompt arraignment, it was deemed necessary to render inadmissible incriminating statements elicited from defendants during a period of unlawful detention." Mallory v. United States, 354 U.S. 449, at p. 453, 77 S.Ct. at p. 1358.

The Court recognized that orderly law enforcement requires certain administrative procedures to take place after arrest and prior to arraignment. This process, which may include fingerprinting, photo-

1. Rule 5(a) of the Federal Rules of Criminal Procedure provides:

"(a) Appearance Before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith."

Rule 5(b) of the Federal Rules of Criminal Procedure provides:

"(b) Statement by the Commissioner. The commissioner shall inform the defendant of the complaint against him, of his right to retain counsel and of his right to have a preliminary examination. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him. The commissioner shall allow the defendant reasonable time and opportunity to consult counsel and shall admit the defendant to bail as provided in these rules."

graphing and getting a proper name and address from the defendant, is known as "booking." But thereafter any further delay becomes suspect.

"The requirement of Rule 5(a) is part of the procedure devised by Congress for safeguarding individual rights without hampering effective and intelligent law enforcement. Provisions related to Rule 5(a) contemplate a porcedure that allows arresting officers little more leeway than the interval between arrest and the ordinary administrative steps required to bring a suspect before the nearest available magistrate. * *" Mallory v. United States, 354 U.S. 449, at p. 453, 77 S.Ct. at p. 1358.

■ In the case at bar defendant was duly arrested pursuant to warrant and taken to Secret Service headquarters for normal booking procedures. Certainly up until the point that booking was completed there can be no claim of undue delay. Furthermore, a short period of questioning immediately thereafter is justified as part of the preliminary information-getting which is incidental to arrest. Indeed, this much is conceded by defense counsel, who moves only to suppress any statements obtained after 10:00 P.M. of the evening of defendant's arrest.

At 10:00 P.M. the defendant accompanied the Special Agents to his business premises. The trip to the defendant's place of business was a proper means of checking defendant's story. Haines v. United States, 188 F.2d 546 (9th Cir., 1951), cert. denied 342 U.S. 888, 72 S.Ct. 172, 96 L.Ed. 666. At 12:00 midnight the defendant was taken to the Federal House of Detention, where he spent the night.

■ The next morning, at 11:00 A.M., defendant was picked up at the Federal House of Detention and taken directly to Secret Service headquarters at 90 Church Street. It is from this point forward that the defendant's detention becomes "an unnecessary delay" in arraignment.

The test of unnecessary delay cannot be measured arithmetically in terms of the number of hours between arrest and arraignment. There have been cases where circumstances justified a delay of three full days. United States v. Walker, 176 F.2d 564 (2d Cir., 1949), cert. denied 338 U.S. 891, 70 S.Ct. 239, 94 L.Ed. 547; United States v. Keegan, 141 F.2d 248 (2d Cir., 1944). (Arrest took place on a week end preceding a holiday and no arraigning officer was available.) Other cases, including Mallory, hold that a period of seven hours may be unreasonable. The test is set forth in Mallory, supra, 354 U.S. at page 455, 77 S.Ct. at page 1359;

"The duty enjoined upon arresting officers to arraign 'without unnecessary delay' indicates that the command does not call for mechanical or automatic obedience. Circumstances may justify a brief delay between arrest and arraignment, as for instance, where the story volunteered by the accused is susceptible of quick verification through third parties. But the delay must not be of a nature to give opportunity for the extraction of a confession."

Here we have the crux of the matter. Defendant was questioned intensively on the night of his arrest. Federal officers had ample opportunity to check out his story and examine his automobile, business and residential premises. Nevertheless, on the morning of March 30th, Special Agents returned the defendant to Secret Service headquarters and began the interrogation once again. There was no administrative reason for bringing the defendant back to 90 Church Street. The Special Agents brought the defendant back specifically and solely for the purpose of getting a confession from him. This was brought out clearly at the hearing. (Tr. 144). Thus the delay in arraigning the defendant was the kind specifically cautioned against in Mallory.

It is to be noted that all during the prior evening defendant was denied the

opportunity to call his lawyer, or his family, to tell anyone of his predicament. At precisely the time he should have been brought before a federal commissioner or judge, the defendant made the admissions and signed the statement which are the subject of his motion to suppress.

The defendant has shown, and the Government does not seriously contest the fact, that there were several federal judges available for arraignment at the United States Court House only minutes away from the Federal House of Detention. (Defendant's Exhibit A). There is no question as to the availability of a federal official competent to arraign the defendant at the time he was brought to Secret Service headquarters and that fact was known, or could very easily have been ascertained, by the Special Agents.

The Government, in opposing defendant's motion, relies strongly on two recent decisions of the Court of Appeals for the Second Circuit. United States v. Ladson, 294 F.2d 535 (2d Cir., 1961) and United States v. Vita, 294 F.2d 524 (2d Cir., 1961). These cases are distinguishable from the case at bar.

The facts in Ladson were similar to those in the instant case. Ladson was arrested at 7:00 P.M. on a Friday evening, questioned at 90 Church Street until 12:00 midnight and then taken to the Federal House of Detention where he spent the night. On Saturday morning he was taken to the office of an Assistant United States Attorney where he signed a written confession. He was then arraigned at 12:00 noon. The Court of Appeals held that the delay in arraignment was not "unnecessary":

> " * * * The admissions Ladson made to the narcotics agents the evening before had not been put into written form. A delay of an hour or more *for the purpose of reducing oral admissions to writing* clearly does not violate Rule 5(a). * * * " (Italics supplied). United States v. Ladson, 294 F.2d 535, at p. 537.

There is no evidence here that the defendant made any incriminating statements any time prior to Saturday morning.

The second ground for holding that the admission of the incriminating statement by Ladson was not reversible error was that no clear objection to its introduction was made at the trial. The objection made by defense counsel in this case was well in advance of trial. It is apparent that the two decisive factors supporting the holding in Ladson are not present here.

In the Vita case the defendant was taken to F.B.I. headquarters voluntarily at 10:00 A.M. and not arraigned until the following morning. That decision rested on the fact that the prisoner was not under arrest during the period of his questioning, that he was not mistreated or coerced, was free to leave at any time and in fact fully and freely cooperated with the F.B.I. agents.

> "Vita was apparently confident of his ability to talk himself clear of whatever suspicions the F.B.I. had of his possible complicity. * * * Having chosen to talk with the F.B.I. agents, Vita cannot now be heard to complain because his calculated risk worked to his disadvantage. Dunn v. United States, 5 Cir., 273 F.2d 470, 473, certiorari denied 1960, 363 U.S. 848, 80 S.Ct. 1625, 4 L.Ed.2d 1731." United States v. Vita, 294 F.2d 524, at p. 529.

It is interesting to note that Judge Waterman, in a separate concurring opinion, stated that if Vita had been uncooperative and unwilling to remain voluntarily at F.B.I. headquarters for the length of time he did remain there, then the case might be entirely different. Similarly, in United States v. Leviton, 193 F.2d 848 (2d Cir. 1951), the court held that a detention from 9:00 A.M. until an evening arraignment was not a violation of Rule 5(a) where the defendant cooperated and seemed willing to admit his guilt at the outset.

" * * * Had he been silent and unco-operative, the result might well have been different; but we cannot hold the court in error in concluding that the delay occasioned by his own readiness to confess and voluntary assistance to the investigating authorities was reasonable under Rule 5(a), F.R.Cr.P." United States v. Leviton, 193 F.2d 848, at p. 855.

The situation here is quite different. There is ample evidence that the defendant, although upset during the period of his detention, was anything but cooperative. Certainly the delay in arraignment cannot be considered to have been occasioned or even acquiesced in by the defendant.

■ One more contention put forth by the Government remains to be answered. At the time of arraignment Judge Weinfeld read over the defendant's written statement to himself, then asked the defendant whether the statement was true and whether he had signed it. The defendant claims to have answered "Yes and No" to these queries, whereas a government witness testified that the defendant made an unqualified affirmative reply. The Government urges that the defendant's reply to Judge Weinfeld's questions constitutes a reaffirmation of his earlier statements and the statement becomes admissible on this ground. Accepting the Special Agent's version as accurate, the Court nevertheless must conclude that the defendant's simple "Yes" answer is not enough to resuscitate an otherwise improperly taken statement. The defendant was a layman, unrepresented by counsel, and in strange surroundings. It is doubtful that he fully realized the significance of the ar-

raignment proceedings. The statement was not read to the defendant nor did he read it again before he was asked whether it was true. Under these circumstances there cannot be said to have been a reaffirmation of the written statement at the time of the arraignment. In Jackson v. United States, 273 F.2d 521 (D.C.Cir.1959), the defendant made oral admissions during a prolonged period of detention prior to arraignment. After arraignment these admissions were set out in written form and signed by the defendant. The court, nevertheless, held that the written statement given after arraignment was to be excluded, as well as the oral admissions made prior to arraignment.

"Jackson's signing of the document cannot in any way be considered an independent act based upon proper counsel or as occurring after time for deliberate reflection. Rather, the signature was obtained as a result of a purposeful process of inquiry undertaken during a period of unlawful detention. Therefore, the challenged confession should have been excluded." Jackson v. United States, 273 F.2d 521, at p. 523.[2]

Similarly in this case the defendant's monosyllabic reply to a judge's question during an unfamiliar legal proceeding could hardly be considered "an independent act based upon proper counsel or as occurring after time for deliberate reflection."

The defendant's motion seeks to suppress the use of any oral or written statements made by the defendant after 10:00 P.M. of the night of his arrest, up to the time of his arraignment. As was indicated earlier, the Court finds that the defendant cooperated in the search of his

---

**2.** On retrial the District Court held a hearing which indicated that Jackson had been fully advised and warned of the consequences of any statements he might give. These warnings were given repeatedly by the police, two judges and defense counsel three days after arraignment.

The Court of Appeals, after disclosure of the elaborate steps taken to protect Jackson held, under these circumstances, that the admission of the written confession previously suppressed was proper. Jackson v. United States, 285 F.2d 675 (D.C. Cir. 1960).

premises made by the Special Agents from 10:00 P.M. to 12:00 midnight on March 30, 1962, and any evidence or statement obtained at that time was done so properly. Any statements made by the defendant on Friday night were not made during the course of "an unnecessary delay" and are therefore not excludable on these grounds. However, the Court finds that any statements, oral or written, made by the defendant from the time he left the Federal House of Detention on Saturday morning up until the time he was arraigned before Judge Weinfeld that afternoon, were taken by the Government in violation of Rule 5(a) of the Federal Rules of Criminal Procedure and consequently cannot be used against the defendant at trial. So ordered.