## MALLORY v. UNITED STATES.

No. 521.   Argued April 1, 1957.—Decided June 24, 1957.

*William B. Bryant* argued the cause for petitioner. With him on the brief were *Joseph C. Waddy* and *William C. Gardner.*

*Edward L. Barrett, Jr.* argued the cause for the United States.   With him on the brief were *Solicitor General Rankin, Assistant Attorney General Olney, Beatrice Rosenberg* and *Julia P. Cooper.*

Mr. Justice Frankfurter delivered the opinion of the Court.

Petitioner was convicted of rape in the United States District Court for the District of Columbia, and, as authorized by the District Code, the jury imposed a

death sentence. The Court of Appeals affirmed, one judge dissenting. 98 U. S. App. D. C. 406, 236 F. 2d 701. Since an important question involving the interpretation of the Federal Rules of Criminal Procedure was involved in this capital case, we granted the petition for certiorari. 352 U. S. 877.

The rape occurred at six p. m. on April 7, 1954, in the basement of the apartment house inhabited by the victim. She had descended to the basement a few minutes previous to wash some laundry. Experiencing some difficulty in detaching a hose in the sink, she sought help from the janitor, who lived in a basement apartment with his wife, two grown sons, a younger son and the petitioner, his nineteen-year-old half-brother. Petitioner was alone in the apartment at the time. He detached the hose and returned to his quarters. Very shortly thereafter, a masked man, whose general features were identified to resemble those of petitioner and his two grown nephews, attacked the woman. She had heard no one descend the wooden steps that furnished the only means of entering the basement from above.

Petitioner and one of his grown nephews disappeared from the apartment house shortly after the crime was committed. The former was apprehended the following afternoon between two and two-thirty p. m. and was taken, along with his older nephews, also suspects, to police headquarters. At least four officers questioned him there in the presence of other officers for thirty to forty-five minutes, beginning the examination by telling him, according to his testimony, that his brother had said that he was the assailant. Petitioner strenuously denied his guilt. He spent the rest of the afternoon at headquarters, in the company of the other two suspects and his brother a good part of the time. About four p. m. the three suspects were asked to submit to "lie detector" tests, and they agreed. The officer in charge of the poly-

graph machine was not located for almost two hours, during which time the suspects received food and drink. The nephews were then examined first. Questioning of petitioner began just after eight p. m. Only he and the polygraph operator were present in a small room, the door to which was closed.

Following almost an hour and one-half of steady interrogation, he "first stated that he could have done this crime, or that he might have done it. He finally stated that he was responsible . . . ." (Testimony of polygraph operator, R. 70.) Not until ten p. m., after petitioner had repeated his confession to other officers, did the police attempt to reach a United States Commissioner for the purpose of arraignment. Failing in this, they obtained petitioner's consent to examination by the deputy coroner, who noted no indicia of physical or psychological coercion. Petitioner was then confronted by the complaining witness and "[p]ractically every man in the Sex Squad," and in response to questioning by three officers, he repeated the confession. Between eleven-thirty p. m. and twelve-thirty a. m. he dictated the confession to a typist. The next morning he was brought before a Commissioner. At the trial, which was delayed for a year because of doubt about petitioner's capacity to understand the proceedings against him, the signed confession was introduced in evidence.

The case calls for the proper application of Rule 5 (a) of the Federal Rules of Criminal Procedure, promulgated in 1946, 327 U. S. 821. That Rule provides:

"(a) APPEARANCE BEFORE THE COMMISSIONER. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer

empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith."

This provision has both statutory and judicial antecedents for guidance in applying it. The requirement that arraignment be "without unnecessary delay" is a compendious restatement, without substantive change, of several prior specific federal statutory provisions. (*E. g.*, 20 Stat. 327, 341; 48 Stat. 1008; also 28 Stat. 416.) See Dession, The New Federal Rules of Criminal Procedure: I, 55 Yale L. J. 694, 707. Nearly all the States have similar enactments.

In *McNabb* v. *United States,* 318 U. S. 332, 343–344, we spelled out the important reasons of policy behind this body of legislation:

"The purpose of this impressively pervasive requirement of criminal procedure is plain. . . . The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication. Legislation such as this, requiring that the police must with reasonable promptness show legal cause for detaining arrested persons, constitutes an important safeguard—not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society. For this procedural requirement checks resort to those reprehensible practices known as the 'third degree' which, though universally rejected as indefensible, still find their

way into use. It aims to avoid all the evil implications of secret interrogation of persons accused of crime."

Since such unwarranted detention led to tempting utilization of intensive interrogation, easily gliding into the evils of "the third degree," the Court held that police detention of defendants beyond the time when a committing magistrate was readily accessible constituted "willful disobedience of law." In order adequately to enforce the congressional requirement of prompt arraignment, it was deemed necessary to render inadmissible incriminating statements elicited from defendants during a period of unlawful detention.

In *Upshaw* v. *United States,* 335 U. S. 410, which came here after the Federal Rules of Criminal Procedure had been in operation, the Court made it clear that Rule 5 (a)'s standard of "without unnecessary delay" implied no relaxation of the *McNabb* doctrine.

The requirement of Rule 5 (a) is part of the procedure devised by Congress for safeguarding individual rights without hampering effective and intelligent law enforcement. Provisions related to Rule 5 (a) contemplate a procedure that allows arresting officers little more leeway than the interval between arrest and the ordinary administrative steps required to bring a suspect before the nearest available magistrate. Rule 4 (a) provides: "If it appears from the complaint that there is probable cause to believe that an offense has been committed and that the defendant has committed it, a warrant for the arrest of the defendant shall issue . . . ." Rule 4 (b) requires that the warrant "shall command that the defendant be arrested and brought before the nearest available commissioner." And Rules 5 (b) and (c) reveal the function of the requirement of prompt arraignment:

"(b) STATEMENT BY THE COMMISSIONER. The commissioner shall inform the defendant of the com-

plaint against him, of his right to retain counsel and of his right to have a preliminary examination. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him. The commissioner shall allow the defendant reasonable time and opportunity to consult counsel and shall admit the defendant to bail as provided in these rules.

"(c) PRELIMINARY EXAMINATION. The defendant shall not be called upon to plead. If the defendant waives preliminary examination, the commissioner shall forthwith hold him to answer in the district court. If the defendant does not waive examination, the commissioner shall hear the evidence within a reasonable time. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. If from the evidence it appears to the commissioner that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the commissioner shall forthwith hold him to answer in the district court; otherwise the commissioner shall discharge him. The commissioner shall admit the defendant to bail as provided in these rules."

The scheme for initiating a federal prosecution is plainly defined. The police may not arrest upon mere suspicion but only on "probable cause." The next step in the proceeding is to arraign the arrested person before a judicial officer as quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined. The arrested person may, of course, be "booked" by the police. But he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt.

The duty enjoined upon arresting officers to arraign "without unnecessary delay" indicates that the command does not call for mechanical or automatic obedience. Circumstances may justify a brief delay between arrest and arraignment, as for instance, where the story volunteered by the accused is susceptible of quick verification through third parties. But the delay must not be of a nature to give opportunity for the extraction of a confession.

The circumstances of this case preclude a holding that arraignment was "without unnecessary delay." Petitioner was arrested in the early afternoon and was detained at headquarters within the vicinity of numerous committing magistrates. Even though the police had ample evidence from other sources than the petitioner for regarding the petitioner as the chief suspect, they first questioned him for approximately a half hour. When this inquiry of a nineteen-year-old lad of limited intelligence produced no confession, the police asked him to submit to a "lie-detector" test. He was not told of his rights to counsel or to a preliminary examination before a magistrate, nor was he warned that he might keep silent and "that any statement made by him may be used against him." After four hours of further detention at headquarters, during which arraignment could easily have been made in the same building in which the police headquarters were housed, petitioner was examined by the lie-detector operator for another hour and a half before his story began to waver. Not until he had confessed, when any judicial caution had lost its purpose, did the police arraign him.

We cannot sanction this extended delay, resulting in confession, without subordinating the general rule of prompt arraignment to the discretion of arresting officers in finding exceptional circumstances for its disregard. In every case where the police resort to interrogation of

an arrested person and secure a confession, they may well claim, and quite sincerely, that they were merely trying to check on the information given by him. Against such a claim and the evil potentialities of the practice for which it is urged stands Rule 5 (a) as a barrier. Nor is there an escape from the constraint laid upon the police by that Rule in that two other suspects were involved for the same crime. Presumably, whomever the police arrest they must arrest on "probable cause." It is not the function of the police to arrest, as it were, at large and to use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on "probable cause."

*Reversed and remanded.*