UNITED STATES of America

v.

John E. TRILLING.

Cr. No. 965-55.

United States District Court
District of Columbia.

Nov. 20, 1957.

Oliver Gasch, U. S. Atty., Joel D. Blackwell, Asst. U. S. Atty., Washington, D. C., for the Government.

John Idomir, Washington, D. C., for defendants.

KEECH, District Judge.

This case is before the court on an application for bond pending appeal from three convictions (Criminal No. 965, 966, and 967–55), a prior application to the appellate court having been denied without prejudice in order that defendant might apply to the trial court. At the request of counsel for the defendant, the motion was set down promptly for hearing, a full hearing was accorded counsel, and at the conclusion of the argument the application was taken under advisement. Since that time the court has reviewed his own notes and the official transcript of the trial.

Counsel attempts to justify the application for bond pending appeal upon the ground that there is a "strongly reasonable likelihood" of reversal of the convictions, three principal points having been raised on appeal: (1) inadmissibility of the confessions, under the rule enunciated in Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479; (2) failure to grant a severance of Counts 1 and 2 from Count 3 in Criminal No. 965–55; and (3) prejudicial argument by the prosecutor with reference to the confessions.[1]

As the court indicated to counsel at the outset of the motion, he has considered the application for bond only as it relates to the appeal from the convictions in Criminal No. 965–55, the case tried before him. In that case, under Counts 1 and 2, the defendant Trilling was convicted of housebreaking and larceny from the premises of Air Brakes & Controls, Inc., at 1411 L Street, N.W., on August 27, 1955, and under Count 3 of housebreaking of the building of Johnson & Wimsatt, Inc., at 24th Place and Bladensburg Road, N.E., on September 1, 1955.

The evidence adduced at the trial disclosed that in the early morning of September 1, 1955, about 2:00 or 2:30 a. m., Officer Trammelle, a detective assigned to the Safe Squad, Metropolitan Police De-

1. A check of the appellant's brief in the Court of Appeals discloses that the third ground does not refer to the case tried before this court.

partment, and Officer Davis, a detective attached to the 12th Precinct, while cruising in a scout car, observed the defendant Trilling and his codefendant, George A. Watts, seated in a parked car on 24th Place, N.E., about 300 yards off Bladensburg Road. Inasmuch as this was in a warehouse area, on a dead-end street not commonly traveled at that time of night, the officers approached the car and asked the occupants' identity. The defendant and his codefendant exhibited their operators' permits and Watts' registration card. While Officer Trammelle checked the identification and wrote their names in his notebook, Officer Davis made a brief check on a warehouse across the street from the parked car (not Johnson & Wimsatt's). The officers, finding nothing amiss, let the defendants go.

At the midnight roll call at 12:01 a. m. September 2, which covered the preceding twenty-four hour period, there was read off a notation of a housebreaking of Johnson & Wimsatt Lumber Company at 24th Place and Bladensburg Road, N. E., in the early morning of September 1. Upon hearing this, Detectives Trammelle and Davis inquired whether fingerprints had been found on the scene of the housebreaking and, upon learning that prints had been taken, requested that they be compared with prior prints of Trilling and Watts on file at the Identification Bureau. When a comparison showed the prints at the scene to be those of Trilling, the officers started out to look for the defendants; and, accompanied by two uniformed police officers, they arrested Trilling at his home at about 5:30 a. m. that same morning. Trilling was taken to Police Headquarters, where he was booked in the Central Cellblock on an investigation charge at 7:40 a. m.[2] In the car on the

way to Headquarters after the arrest and at Headquarters prior to the time he was booked, the arresting officers questioned Trilling, but he denied any connection with the Johnson & Wimsatt housebreaking. About 8:00 a. m. Trilling was taken to the Safe Squad, where he was questioned from about 8:20 to 8:40 a. m. by Detective Sergeant Friel in the presence of Detective Sergeant Winter, also of the Safe Squad, these officers not having come on duty until 8:00 o'clock. Sergeant Friel, who had known Trilling's family for many years, talked with him first about the Johnson & Wimsatt case. Within a few minutes, after he had been told of the fingerprints found at the scene, the defendant admitted that he had broken in with Watts. Sergeant Winter corroborated the time of this oral confession as some time between 8:00 and 8:45 a. m., he thought about 8:15. The defendant was also questioned at this time about the housebreaking and larceny of Air Brakes & Controls, Inc., of which he was convicted under Counts 1 and 2 of the indictment herein, but did not admit that offense until some time later.

At about 9:00 a. m. defendant Trilling was turned over to the Homicide Squad for questioning in connection with a murder. While there, he was given a lie detector test and blood tests of his hands and clothing were made. About 10:00 a. m. the defendant orally confessed to Sergeant Winter the housebreaking and larceny of Air Brakes & Controls, Inc., at 1411 L Street, N.W. Early in the afternoon the defendant was returned to the Safe Squad, the lie detector and blood tests having demonstrated his innocence of the homicide. The defendant was questioned about twenty-two[3] addi-

---

2. The transcript gives the time of defendant's booking as 7:14 a. m. on the 12th Precinct book instead of 7:40 a. m. It is not clear whether this discrepancy is due to a misunderstanding by the reporter or for some other reason. In any event the court finds the time differential immaterial, since the defendant was questioned promptly after the Safe Squad

detectives came on duty at 8:00 a. m. and made his oral confession within a few minutes thereafter.

3. Sergeant Winter in his early testimony estimated that he had questioned the defendant on fifteen additional housebreakings; but a later check of the book recording reported safe-crackings, from which Sergeant Winter had questioned

tional safecrackings in which a similar method had been used or which were in a direct line out along the railroad tracks from the Johnson & Wimsatt lumber yard. The defendant orally admitted to Sergeant Winter eight of these offenses and, after having been warned that anything he said might be used against him, gave a written confession of the Air Brakes offense, beginning at 2:15 and ending at 2:35 p. m. Since the typist assigned to the Safe Squad was not at work that day, this confession was typed by Sergeant Winter, who was not a trained typist, and the writing of the confession proceeded slowly. It was witnessed by Sergeant Winter, Sergeant Friel, and Mr. Spindler, the manager of Air Brakes. Following this written confession, the defendant repeated his oral admission of the offense to Mr. Spindler, advising him to get a safe with a round door to replace the square-doored safe the defendants had destroyed, as the round door is more difficult to crack.

Shortly after the defendant signed this confession at Police Headquarters, he was taken to the Municipal Court and there charged with the Johnson & Wimsatt housebreaking before a judge sitting as a committing magistrate. This occurred probably about 3:30 p. m., definitely not later than 4:30. At that time, after commitment, the defendant was returned by United States marshals to Police Headquarters, where he signed four additional written confessions in cases not included in the indictment in this case. At no time did he sign a written confession of the Johnson & Wimsatt housebreaking, although about 2:00 p. m. he made further detailed oral admissions to Sergeant Winter concerning the offense and about 9:00 p. m. went with Sergeant Winter, two police officers, and two marshals to Rock Creek Park, where there were recovered some tools which the defendants had used in the Air Brakes offense and a screw driver used to break into Johnson & Wimsatt's.

The defendant Trilling was sentenced by this court in Criminal No. 965–55 to serve from two to six years on Count 1; two to six years on Count 2, to run concurrently with the sentence under Count 1; and two to six years under Count 3, to run consecutively with the sentence in Count 1. Inasmuch as service of these sentences was begun on December 23, 1955, the minimum term under any one of these sentences has not yet elapsed. In view of the defendant's previous record, it is reasonable to suppose that the Parole Board will not grant conditional release to him after service of the bare minimum sentence. The court has been advised that the appeal in this case was argued June 19, 1957, and that there is reasonable expectancy of an early opinion. It is therefore apparent that if the conviction upon any one count of the indictment in Criminal No. 965–55 should be sustained the defendant will have suffered no prejudice from remaining in custody pending a determination of his appeal.

Without passing upon the likelihood of reversal of the convictions under Counts 1 and 2, it is the view of this court that there is not such reasonable probability of reversal of the conviction under Count 3 as to warrant the defendant's release on bond at this time.

The facts surrounding the confession of the Johnson & Wimsatt housebreaking are clearly distinguishable from those which formed the basis of the Mallory decision. This is not a case where the conviction was born of, or substantially produced by, admissions of the defendant made after detention for an unreasonable period, without which the government could not have made a case. The defendant Trilling had been observed by the police under suspicious circumstances in the very neighborhood of the crime at about the time of the offense, but before the police knew the housebreaking had been perpetrated. After it had been determined that a fingerprint found at

the defendant, showed that he had questioned Trilling with respect to twenty-

two offenses in addition to the Johnson & Wimsatt housebreaking.

the scene of the crime was that of the defendant, the officers arrested the defendant Trilling on good probable cause. Defendant was arrested during the early morning hours when no magistrate was available. Although the defendant denied his complicity in the offense to the arresting officers, he readily admitted the housebreaking shortly after he had been booked at Headquarters and within a few minutes after he was first questioned in the Safe Squad, upon being told of the fingerprints. There was no written confession of the Johnson & Wimsatt offense, although, as stated before, the defendant orally gave additional details of this housebreaking about 2:00 p. m. and about 9:00 p. m., after his commitment, went with police officers to the park where a screw driver used in that entry was recovered.

The evidence upon which the defendant was arrested, without any admission by him, was obviously sufficient upon which to base a charge and even conviction. The defendant was arrested during the early morning hours and at the time of his oral confession no magistrate was available. True, as one of the officers admitted in his testimony, the defendant might have been taken before a committing magistrate at the Municipal Court at about 9:30 a. m. on the Johnson & Wimsatt housebreaking alone. However, by that time the defendant had been transferred to the Homicide Squad for questioning with reference to a murder, as well as lie detector and blood tests. Meanwhile defendant was questioned concerning twenty-two other housebreaking or safecracking offenses bearing some similarity in location or method to the admitted housebreaking. Inasmuch as this court is without any information as to the probable cause upon which defendant was questioned with reference to the homicide, it cannot conclude whether or not it was unreasonable for the police to question defendant thereon and to administer the lie detector and blood tests which cleared him. For the same reason the court is unable to determine whether the delay for questioning as to the twenty-two safecrackings was unreasonable. Nor is it necessary to do so, since his questioning as to other offenses is irrelevant to Count 3 of Criminal No. 965–55.

Although it might be contended that the police should have charged the defendant in the Johnson & Wimsatt case alone as soon as a magistrate became available, even if the subsequent detention for entirely unrelated purposes should be held illegal so as to bar later confessions of other offenses, such illegal detention for unrelated purposes could not affect the admissibility of the earlier oral confession, which was not induced or made during illegal detention, but on the contrary was made during a period of reasonable delay after a few minutes' conversation in the Safe Squad, upon the defendant's being confronted with the finding of his fingerprints at the scene of the crime.

As to the refusal of the court to grant severance, this was a proper exercise of the court's discretion. Joinder of the offenses in one indictment was permissible under Rule 8(a), Federal Rules of Criminal Procedure, 18 U.S.C.A. No motion for severance was made until after the trial had begun and the prosecutor had completed his preliminary statement of the case on voir dire. There was no showing of such prejudice as to require a severance of the two offenses for separate trials.

As to the contention of improper argument by government counsel concerning the confession, this relates only to the appeal from Criminal No. 967–55, which was tried before another judge of this Court.

Inasmuch as the court finds that there is not such probability of reversal of the conviction under Count 3 of Criminal No. 965–55 as to warrant a belief that defendant may be prejudiced by denial of bond pending the Court of Appeals' determination of the appeal in that case, the defendant's application for bond pending appeal will be denied.