**UNITED STATES of America, Plaintiff,**

v.

**John A. NAPLES, Defendant.**

**Crim. No. 91–59.**

United States District Court
District of Columbia.

May 12, 1966.

Charles Owen, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Thomas A. Wadden, Jr., Barbara Babcock, Joseph Sitnick, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

The defendant has been twice tried and convicted in this Court and both convictions have been reversed and remanded for new trials. Naples v. United States, 113 U.S.App.D.C. 281, 307 F.2d 618 (1962); 120 U.S.App.D.C. 123, 344 F.2d 508 (1964) (hereinafter referred to as to *Naples I* and *Naples II*). In *Naples I* the Court of Appeals for this Circuit, sitting *en banc,* ruled that a confession, obtained shortly after the defendant was brought to the precinct, had not been secured in violation of Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L. Ed.2d 1479 (1958), and was therefore admissible, and this ruling was upheld as "law of the case" in *Naples II*. Recently the defendant moved the Court of Appeals to amend and clarify this latter ruling. The Court denied the motion to clarify but wrote a brief memorandum in which it declared that "[i]n any new trial, the 'practice' of the law of the case would not operate to bar consideration of the admissibility of these confessions based upon material facts not heretofore adduced [citing *Mallory* cases] or supervening law [citing Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)]." Naples v. United States, No. 18186, D.C.Cir., April 11, 1966, 359 U.S.App.D.C. 276 (footnotes omitted). On the authority of this memorandum, the defendant has moved this Court to suppress the confession. Two hearings have been held in which oral testimony has been taken and argument heard.

I.

The Court of Appeals' meaning in this special memorandum is not entirely clear. The defendant has urged that the admissibility of the confession must now be determined *de novo* and that this Court is free to consider "supervening law" not only in the *Escobedo* area but in the *Mallory* area as well. However, such an interpretation would mean that a three-judge panel of the Court of Appeals had in effect granted this Court the power, without finding new facts, to reverse an *en banc* decision finding the confession here in question not barred by *Mallory*. Such a result seems highly irregular, particularly so when whatever "supervening law" in the *Mallory* area which exists in this Circuit reflects relatively minor changes in focus rather than a substantially different interpretation of the germinal case. Moreover, the interpretation urged by the defendant seems contrary to the language of the memorandum in which *Mallory* cases were cited for the proposition that new facts might permit reconsideration while *Escobedo* alone was cited as justifying reconsideration on the grounds of supervening law. The defendant has also contended that the Court of Appeals' citation of *Escobedo* indicates "that *Escobedo* should be applied to the facts of this case." Yet the Court's purpose in its memorandum seems to have been to permit this Court to reexamine the problem posed by this confession and to determine whether the *Escobedo* result should also obtain here. If the Court of Appeals had been certain that the facts of this case call into operation the *Escobedo* rule, it presumably would have expressed this certainty in the body of its memorandum and would have given this Court some clear guidance as to what the result of its reconsideration of the admissibility of this confession ought to be.

This Court thus reads the memorandum as requiring two things of it: first, it must determine whether new facts exist as to the circumstances under which the confession was obtained which require a different result under the *Mal-*

*lory* cases which the Court of Appeals cited; second, it must determine whether *Escobedo* does apply on these facts and whether the confession is consequently inadmissible.[1]

## II.

No substantial new facts bearing on the circumstances under which the confession was obtained were adduced at the hearing. The basic fact pattern thus remains as it was set forth by the Court of Appeals in *Naples I*, 113 U.S.App.D.C. at 283, 307 F.2d at 620.

On the night of December 16, 1958, Edna G. Jewel was found stabbed to death in her ransacked apartment in northeast Washington. The following day Detective Buch received two telephone calls from an unidentified caller who said he had a "friend" who might have been involved in the homicide. Arriving at the Palace Theater for a rendezvous with the caller, Detective Buch recognized him as Louis Naples. Louis said that the "friend" to whom he had referred was his brother, the defendant John Naples. He added that the defendant had told him on the night of the murder that he had done something terrible and would have to stay away for a while, that he had seen his mother with a lady's wallet that the defendant was supposed to have given her, and that the defendant carried a knife and a bag.

When the defendant arrived at the theater, about 1:15 p. m., Detective Buch placed him under arrest. He was allowed to speak briefly with his brother and the police overheard him deny to his brother that he had committed the murder. Thereafter, the defendant was placed in a police patrol wagon and driven to Precinct No. 9 by two uniformed policemen who asked him no questions. He arrived there at about 1:30 p. m., was led in by the back door and taken to the second floor office of Captain (then Lieutenant) Culpepper, where, in the defendant's presence, Detective Buch explained the circumstances of the arrest. Captain Culpepper then led the defendant to an adjoining room where, according to his testimony at the hearing,

> I believe I explained to him in detail that I was a policeman, and then I told him that he did not have to talk to me or make a statement unless he wanted to. And he said he knew that, or "I know it." I am not sure which.
>
> \* \* \*

Captain Culpepper admitted, however, that he did not inform the defendant of his right to counsel. Continuing, he said,

> I asked him if he had done something wrong, something he was ashamed of, and he indicated that he did not know what I was saying, didn't know what I was referring to. I asked him again if he had not done something that he knew was wrong, and that he was ashamed of, and that he wanted to tell me about.
>
> His answer was, "Do you mean about the lady?"
>
> I said "Yes."

At this point Naples admitted that while he was in Edna Jewel's apartment for the purpose of stealing something, its occupant returned, threw her purse at him, and yelled, "Get out of here." Again, according to Captain Culpepper,

> He said at that point he did not remember anything else. Everything went black. When he came to, she was on the floor, he had a knife in his hand, there was blood on her, and on her clothing, and there was blood on the knife, and he knew that he had hurt the lady.

This interrogation took only a few minutes; certainly it took no more than ten, and probably it took fewer than five. At 1:52 p. m., the defendant was booked.

---

1. Insofar as *Escobedo* overlaps *Mallory* and establishes as constitutional principle what was formerly expressed as a consequence of Rule 5(a) of the Federal Rules of Criminal Procedure, the Court considers itself authorized by the memorandum of the Court of Appeals to reconsider *de novo* the admissibility of the confession.

■ Because these facts, as determined at the hearing, are substantially identical to the facts relied upon in *Naples I*, this Court is precluded under the recent memorandum of the Court of Appeals from reconsidering the admissibility of this confession on *Mallory* grounds.

### III.

The Supreme Court has before it five cases in which the scope of its revolutionary decision in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), will be considered. *Escobedo* established a new principle of constitutional law, but the Court limited its holding to the particular facts involved in the case. 378 U.S. at 490–491, 84 S.Ct. 1758. The exact dimensions of the principle announced by the Court are therefore unclear, and lower courts throughout the land are looking to the decisions in these pending cases for guidance as they consider the admissibility of confessions.

■ Although not mentioned specifically in *Escobedo*, the need to obtain equality of treatment between rich, informed defendants and poor, ignorant ones may have been crucial to the Court in reaching its decision.[2] In order to secure this equal treatment, the Court may adopt a rule outlawing all confessions, or at least those obtained after arrest, where the defendant has not been informed of his fifth and sixth amendment rights and had not knowingly and meaningfully waived these rights. Such an exclusionary rule would clearly render the confession involved here inadmissible, for the government admits that the defendant was not informed of his right to counsel.

■ However, the Supreme Court has not to date given this broad reading to its *Escobedo* ruling. In view of this fact, and because this is a serious case involving a first degree murder charge, the Court cannot in good conscience grant the defendant's motion to suppress, knowing that the government would have no right to appeal such a decision. The motion to suppress will therefore be denied, without prejudice, of course, to the issues involved in it being raised for reconsideration in the light of further Supreme Court pronouncements in an appropriate motion during or after the trial.

fectiveness on the citizens' abdication through unawareness of their constitutional rights." 378 U.S. at 490, 84 S.Ct. at 1764.

2. This is suggested by the Court's observation that "[w]e have also learned the companion lesson of history that no system of criminal justice can, or should, survive if it comes to depend for its continued ef-