**Kenneth Ray HEAFNER, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civ. No. 705.**

United States District Court
E. D. North Carolina,
New Bern Division.

March 4, 1967.

Kenneth Ray Heafner, pro se.

Robert H. Cowen, U. S. Atty., by George E. Tillett, Asst. U. S. Atty., for respondent.

Opinion and Order

LARKINS, District Judge.

## SUMMARY

This cause comes before the Court upon a motion to vacate and set aside sentence, filed in forma pauperis, pursuant to the provisions of Title 28 U.S. C.A., Section 2255. Petitioner seeks to set aside the judgment and the imposition of sentence. Issues were joined by respondent filing answer and motion to dismiss.

Petitioner alleges that his rights as guaranteed by the laws and constitution of the United States have been violated in the following particulars:

(1) that a confession was used against him at his trial which confession was the result of constant questioning, in relay method, by both State and Federal authorities,

(2) that promises of leniency by Sheriff Whorton constituted a "deprivation of due process in violation of the 14th amendment and in violation of the 5th amendment of the United States Constitution."

(3) Petitioner also attacks the sufficiency of the evidence and

(4) the fact that he was without counsel during the period of his interrogation.

Petitioner was found by the jury to be guilty of violating the provisions of Title 18, U.S.C.A. Section 2113(a) and is presently incarcerated in the United States Penitentiary at Marion, Illinois serving the sentence imposed upon him by this Court.

## FINDINGS OF FACT

The defendant-petitioner was stopped on North Carolina Highway 70 in Carteret County, North Carolina on June 3, 1963 by a North Carolina State Highway Patrolman for speeding. He was arrested at 12:50 P.M. approximately twenty-seven miles from the scene of the bank robbery for which he has been convicted. Petitioner was then taken to New Bern, North Carolina and placed in custody pending his trial on the speeding charge the following day.

Approximately two hours after the petitioner was arrested he was questioned by officers of the Federal Bureau of Investigation and the Sheriff of Pamlico County. Petitioner was then transferred to the Pamlico County jail, by Sheriff Whorton, Pamlico County being the scene of the robbery.

Petitioner alleges that he was not taken before a United States Commissioner or County Magistrate and he was not charged with any crime except the

speeding violation for which he had originally been arrested.

Petitioner alleges that he was questioned from approximately 7:00 P.M. until 4:00 A.M. the morning of June 4, 1963. The record is clear that petitioner was questioned after his arrival at the Pamlico County jail, but the record does not support the contention that petitioner was questioned for the nine hour period.

On the morning of June 4, 1963 petitioner was taken to the Craven County Courthouse to stand trial for the traffic violation for which he had been arrested. As a result of his conviction he was sentenced to serve thirty (30) days in the Craven County jail as he could not pay the fine imposed upon him.

Petitioner was then transferred back to the Pamlico County jail. Petitioner was not taken before a United States Commissioner or any other magistrate, but this was not necessary as the petitioner had not been arrested for any violations other than the speeding charge and the federal authorities had not placed any charges against this petitioner.

Petitioner alleges that he was questioned the night of June 4, 1963 from around 7:00 P.M. until about 2:00 A.M. Wednesday, June 5, 1963. Petitioner also contends that F.B.I. Agent John Worsham threatened that he was going to involve the petitioner's family if he did not confess.

On Wednesday afternoon June 5, 1963, petitioner alleged that Sheriff Robert Whorton of Pamlico County gave him a drink of whiskey and this was admitted by the sheriff. The amount given petitioner according to the testimony introduced was about one or two ounces or about two fingers in amount from a fifth bottle of whiskey. Petitioner further contends that the sheriff made certain promises to him and said that he would help him in every way possible if petitioner would confess. Petitioner alleges that the Sheriff said that he would help arrange for petitioner's wife to pay for some hospital bills as she was seven and one half months pregnant at the time

of petitioner's arrest. The Sheriff testified that he did speak to the Welfare people about this matter and they agreed that they would help. The Sheriff admitted that he had told the petitioner that he would help him and that he thought they were getting to be good friends. He said that he tried to be as nice toward petitioner as he knew how.

On Thursday June 6, 1963 petitioner's wife arrived and she was allowed to see the petitioner. Later that night the petitioner told the officers that he wanted to make a statement. The officers furnished him with a pencil and some paper and the petitioner alone in his cell made a signed statement of his involvement in the crime for which he was charged, and the said statement was introduced into evidence at petitioner's trial.

On June 8, 1963 petitioner told one of the F.B.I. Agents that the statement that he had made was true, and told him of the events leading up to his arrival in the area where the bank was robbed. The agent later testified as to this statement at petitioner's trial.

Petitioner further alleges that the Sheriff of Pamlico County told him that he knew the Judge who would try him and they had been good friends and if petitioner would make a statement he would speak to the Judge in petitioner's behalf. Petitioner was also told that if he would admit his guilt that it would help him.

Petitioner was told by the Sheriff that the Sheriff wanted and needed a man to work on his farm and that if the petitioner was available he could get the job.

It appears from the testimony of the F.B.I. Agents that petitioner was warned of his constitutional rights and was told that he could have a lawyer to represent him if he so desired and that the Court would appoint him a lawyer. The agents, however, testified that the petitioner never gave any intimation that he desired an attorney to represent him. He was also informed that he had the right to remain silent and that any statement he made could be used against him. Agent Worsham testified that he told

defendant that he would not make any threats or promises of reward in order to obtain a statement from him.

Petitioner was taken before the United States Commissioner on June 10, 1963.

During the trial of the case Heafner was represented by an able and respected member of the Craven County Bar of his own choice and privately retained. When the government offered evidence relating to the statements made by the petitioner, defendant's counsel objected and moved to suppress the evidence and for a voir dire examination.

A voir dire examination was held in the Judge's Chambers out of the presence of the jury where the defendant testified that no threats had been made to get him to confess and that there were no promises made to him although he said that he was led to believe it would help him if he made a statement. F.B.I. Agent Akers and Sheriff Whorton also testified at the voir dire examination. At the conclusion of the hearing the Court overruled the motion to suppress and allowed the testimony to be admitted into evidence.

The Court at the conclusion of the evidence instructed the jury that they were to determine if the confession was voluntary. The Court said: pp. 235, 236

"Now, confession is an admission by a defendant of all the facts constituting the crime charged. The very nature of a confession requires that the circumstances surrounding it be subjected to careful scrutiny, in order to determine surely whether it was voluntarily and understandingly made.

If the evidence does not convince you beyond all reasonable doubt that the confession in this case was voluntarily and understandingly made, the jury should disregard it entirely.

On the other hand, if the evidence does show and satisfies you beyond a reasonable doubt that a confession was in fact voluntarily and understandingly made by the defendant, then the jury should consider it as evidence against the defendant who volun-

tarily and understandingly makes the confession either orally or written."

The jury returned a verdict of guilty and the petitioner before being sentenced told the Court "the only thing that I can say is that I am sorry I did it." (Transcript page 265) He further stated that there had been no promises or threats made to him while he was being held in custody.

Petitioner before being sentenced moved for a new trial which motion was denied by the Court. Petitioner did not appeal but did file a motion to vacate and set aside the sentence pursuant to the provisions of Title 28 U.S.C.A. Section 2255. This Court denied the relief sought by petitioner, and the Fourth Circuit Court of Appeals affirmed the action by its Memorandum Order of June 22, 1965 (No. 10,127).

## CONCLUSIONS OF LAW

The Fourth Circuit held in a previous appeal, No. 10,127, that the rules of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943) and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) were inapplicable to the facts of this case in that the petitioner was not in Federal custody at the time petitioner made his statement.

In his first petition it was held that petitioner did not raise any issue as to whether his confession was coerced. The Fourth Circuit Court also held that the Trial Court had made a full inquiry during the voir dire examination as to the voluntariness of Heafner's confession. The Circuit Court said: P. 4—Memorandum Order

"Any question concerning the Trial Court's ruling on the admissibility of the statement should have been presented on direct appeal. Since the admissibility of the statement was fully considered at the Trial Court's hearing on the motion to suppress, Heafner is not entitled to another evidentiary hearing on this contention. Having failed to appeal, Heafner is precluded from raising, in a motion under Sec-

tion 2255, the contention that unlawfully obtained evidence was admitted against him. Shorten v. Markley, 7 Cir., 330 F.2d 102, Sinks v. United States, 7 Cir., 318 F.2d 436, 437 * * *."

Petitioner cannot now attack the sufficiency of the evidence by a motion pursuant to 28 U.S.C.A. Section 2255 as this should have been raised by direct appeal. Howell v. United States, 172 F.2d 213 (4th Cir., 1949), Franano v. United States, 303 F.2d 470 (8th Cir., 1962).

Petitioner further contends that his constitutional rights were violated in that he did not have the benefit of counsel during the time of his interrogation. Petitioner attempts to come within the purview of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) but the Supreme Court held in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) that Escobedo was not to be applied retroactively.

Petitioner in an amendment to his original petition requests that the Court appoint him counsel to represent him in all future litigation. As this Court has found that petitioner is not entitled to the relief which he now seeks it is not necessary to furnish him with counsel and the Court acting within its discretion denies this request. Baker v. United States, 334 F.2d 444 (8th Cir., 1964), Mitchell v. United States, 359 F.2d 833 (7th Cir., 1966).

In summary it should be noted that constitutional questions cannot be raised under this section (Section 2255) where there has been a hearing on a motion to suppress the evidence and due process was not denied in ruling adversely to the petitioner. Sinks v. United States, 318 F.2d 436 (7th Cir., 1963) certiorari denied in 375 U.S. 946, 84 S.Ct. 355, 11 L.Ed.2d 279 (1963). See also Kapsalis v. United States, 345 F.2d 392 (7th Cir., 1965) certiorari denied 382 U.S. 946, 86 S.Ct. 406, 15 L.Ed.2d 354 (1965), Campbell v. United States, 355 F.2d 394 (7th Cir., 1966). It should

also be noted that petitioners should not attempt to file successive petitions alleging the same grounds as previous petitions but should make complete factual allegations stating all alleged denials of constitutional rights in their original petition. Petitioners are warned against attempting to seek their relief in a piecemeal fashion.

Motion to vacate the sentence denied and motion to dismiss allowed.