**UNITED STATES of America,**
**Appellee,**

v.

**Charles W. SEOHNLEIN, Appellant.**

**No. 13635.**

United States Court of Appeals,
Fourth Circuit.

Argued March 2, 1970.

Decided March 26, 1970.

Certiorari Denied June 22, 1970.
See 90 S.Ct. 2215.

---

1. § 32(a) (2):

Lawrence S. Greenwald, Baltimore, Md., (court-appointed counsel) (Gordon,

Feinblatt & Rothman, Baltimore, Md., on the brief) for appellant.

Paul M. Rosenberg, Asst. U. S. Atty., (Stephen H. Sachs, U. S. Atty., and Stephen D. Shawe, Asst. U. S. Atty., on the brief), for appellee.

Before WINTER, CRAVEN, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge.

Charles W. Seohnlein appeals his conviction for bank robbery on the ground that his confession and money seized by the police were admitted in evidence in violation of his rights under the Fourth Amendment and Federal Rule of Criminal Procedure 5(a). We affirm the judgment of the district court.

Seohnlein and John Rutkowski[*] robbed a bank in Baltimore and fled to St. Louis. Their possession of a large amount of cash, their change of lodging, and the trade-in of their new car aroused the suspicion of the St. Louis police. A detective investigating their conduct learned from a car salesman that Soehnlein, traveling under the alias of Henry Thomas, did not have a valid driver's license.

The police, observing Seohnlein drive away from his motel with Rutkowski and two women, stopped the car and asked to see Seohnlein's driver's license. He handed them a wallet containing an expired license issued to Henry Thomas.

The police arrested him for driving with an invalid license and then, upon examining the contents of the wallet for identification to verify the name Thomas, found papers bearing the name Charles Seohnlein. They promptly advised Seohnlein, who still posed as Thomas, of his constitutional rights and took him to police headquarters. Rutkowski, who gave his correct name, was not arrested, but he and the women went along in their own car to headquarters.

The police asked the F.B.I. for information about Seohnlein, Thomas, Rut-

---

[*] Rutkowski's conviction was affirmed per curiam, United States v. Rutkowski, 419 F.2d 836 (4th Cir. 1970).

kowski, and the women. In the meantime, Seohnlein voluntarily made a false exculpatory statement. Soon the F.B.I. notified the police that Seohnlein and Rutkowski were fugitives and that warrants had been issued in Baltimore charging them with bank robbery. The police immediately arrested all four persons for bank robbery, confiscated their money, and again warned them of their rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

An F.B.I. Agent soon arrived and found that some of the money confiscated from Seohnlein and Rutkowski matched the bait money taken from the bank. At 2:30 A.M., Seohnlein was warned a third time of his *Miranda* rights, and he signed a waiver using his alias of Henry Thomas. The F.B.I. Agent then told him that he fitted the description of one of the robbers and that some of the cash taken from him and Rutkowski was the bank's bait money.

Seohnlein promptly acknowledged his true identity and admitted the robbery. He also consented to a search of his motel room, where additional loot was found.

The district judge excluded from evidence the papers found in Seohnlein's wallet and his exculpatory statements made before the police learned of the bank robbery warrants, but he admitted evidence relating to events that occurred afterwards. Seohnlein, nevertheless, contends that his confession and the seizure of the money resulted from information gained from the search of his wallet and his detention. Consequently, he argues, they should have been excluded as the fruit of the poisonous tree.

■ Seohnlein's contention lacks merit for several reasons. First, the exculpatory statements made during detention did not lead the police to any information. Second, the district judge found that the police would have learned

of the Baltimore warrants through Rutkowski and that they would have arrested Seohnlein even if they had not discovered the papers in his wallet. Although the knowledge gained from examining the wallet may have accelerated a lawful arrest on the Baltimore warrant, it did not taint the evidence that was subsequently obtained. Leek v. Maryland, 353 F.2d 526 (4th Cir. 1965). Alternatively, the examination of the wallet for identification after Seohnlein was lawfully arrested for driving with an invalid license was not an illegal search. Cotton v. United States, 371 F.2d 385, 392 (9th Cir. 1967).

■ Seohnlein's complaint that his confession was inadmissible under Rule 5(a) and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), because of unreasonable delay in taking him before a United States Commissioner is also without merit. An F.B.I. Agent testified that a federal marshal took custody of Seohnlein later that morning and that he thought Seohnlein appeared before a commissioner in the morning or afternoon. We therefore will assume, without deciding, that the delay was unreasonable.

Seohnlein, however, was not subjected to extensive interrogation by the police or the F.B.I. He confessed and consented to the search of his motel room about three hours after he was taken to police headquarters and within a short time after the F.B.I. Agent arrived. All of this occurred before, not after, the passage of time rendered his detention unreasonable. In these circumstances it is clear that the evidence was not obtained by unreasonably delaying his appearance before the commissioner. Therefore the evidence was properly admitted. United States v. Mitchell, 322 U.S. 65, 69, 64 S. Ct. 896 (1944); see Culombe v. Connecticut, 367 U.S. 568, 599 n. 50, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961) (dictum).

Affirmed.