**Lloyd WOODSON, Appellant,**

v.

**Lou V. BREWER, Warden, Appellee.**

**No. 20409.**

United States Court of Appeals,
Eighth Circuit.

Feb. 9, 1971.

---

3. Merger does not result simply because the same evidence is offered to prove both offenses (Harris v. United States, 359 U.S. 19, 23, 79 S.Ct. 560, 3 L.Ed. 2d 597 (1959)), or because in the particular circumstances one of the offenses had to be committed in order to commit the other. *See* Morgan v. Devine, 237 U.S. 632, 638, 35 S.Ct. 712, 59 L.Ed. 1153 (1915).

Appellant suggests that the latter was true in this case. However, there was evidence that many trees which were cut were not removed.

Lloyd Woodson, pro se.

Richard C. Turner, Atty. Gen. of Iowa, Michael J. Laughlin, Asst. Atty. Gen., Des Moines, Iowa, for appellee.

Before MEHAFFY and HEANEY, Circuit Judges, and MEREDITH, District Judge.

HEANEY, Circuit Judge.

Lloyd Woodson appeals from a denial of his application for a writ of habeas corpus by the United States District Court for the Southern District of Iowa. He was convicted on September 5, 1952, in the State District Court of Lee Coun-

ty, Iowa, on his plea of guilty to the charge of second degree murder, and was sentenced to life imprisonment. He has twice appealed to the Iowa Supreme Court, State v. Woodson, 244 Iowa 1262, 59 N.W.2d 556 (1953), cert. denied, 347 U.S. 907, 74 S.Ct. 433, 98 L.Ed. 1065 (1954); Woodson v. Bennett, 256 Iowa 807, 128 N.W.2d 903 (1964), and his case has previously been before this Court on application for a certificate of probable cause. Woodson v. Bennett, Misc. No. 289 (8th Cir. May 7, 1965) (Unpublished.)

On appeal, Woodson alleges a number of grounds for relief. We have carefully considered each of them[1] and find that only two merit discussion: (1) that Woodson's plea of guilty was not voluntary; and (2) that new evidence has been discovered which proves Woodson's innocence.

The essential facts, developed in the numerous proceedings in state and federal courts, follow.

On October 14, 1949, Norman Juhl, a Keokuk, Iowa, police officer, was shot. He died a few days later from his wounds. On October 17, 1949, Woodson was arrested, detained overnight and questioned in connection with the killing by local police in Quincy, Illinois, Woodson's residence. He was released the next morning. In June, 1950, he was questioned a second time by Keokuk and state police officers in Bloomington, Illinois. Shortly thereafter, the appellant

---

1. The right to a speedy trial is a non-jurisdictional defense and is thus waived by a voluntary plea of guilty. Becker v. State, 435 F.2d 157 (8th Cir. 1970); Pate v. United States, 297 F.2d 166 (8th Cir.), cert. denied, 370 U.S. 928, 82 S.Ct. 1569, 8 L.Ed.2d 507 (1962). Therefore, our ultimate disposition of the guilty plea issue eliminates the need to consider further this contention.

Both the Iowa Supreme Court, State v. Woodson, 244 Iowa 1262, 59 N.W.2d 556 (1953), cert. denied, 347 U.S. 907, 74 S.Ct. 433, 98 L.Ed. 1065 (1954), and the District Court below determined that the appellant was competently represented by counsel. We can find no basis in the record for disturbing that finding.

Finally, the state trial court's failure to grant a hearing on the degree of the crime as provided by Iowa Code § 690.4 does not entitle the appellant to release on habeas corpus. The Iowa Supreme Court has interpreted the statute not to require a hearing when sentence is imposed on a plea of guilty to second degree murder. State v. Woodson, *supra.* We find that the failure to hold a hearing does not amount to constitutional error, and we decline to overturn the Iowa Supreme Court's interpretation of Iowa law. See, Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

was incarcerated on another charge in the Illinois State Penitentiary at Joliet. He remained there until June 23 or 25, 1952, at which time he was transferred to the Keokuk authorities on a warrant charging him with the first degree murder of Juhl. He was placed in the Keokuk City Jail.

An attorney, William Hollingsworth, now deceased, visited Woodson in jail shortly after Woodson's arrival, apparently at the request of Woodson's family.

On the night of June 30, 1952, Woodson allegedly escaped from the city jail. He was recaptured early the next morning and was arraigned on the escape charge the same day. Hollingsworth represented Woodson, who entered a plea of not guilty. The escape charge was never prosecuted. Woodson was then transferred to the county jail where he was held until September 5, 1952.

Woodson was not brought before a magistrate on the murder charge until September 5, 1952. During that time, he was questioned on numerous occasions by officers of the Keokuk Police Department and personnel from the County Prosecutor's Office. Hollingsworth was not present at these sessions. Woodson was never advised that he had a right to have counsel present during interrogation, that the court would appoint counsel if he lacked funds, that he had a right to remain silent, or that any statement he made could be used against him in court.

On August 29, 1952, acting in reliance on the County Prosecutor's promise to reduce the charge from first to second degree murder, Woodson agreed to confess to the murder of Juhl and to plead guilty to the reduced charge. Woodson then gave a detailed written confession. Hollingsworth was present when the confession was taken.

On September 5, 1952, Woodson appeared before the District Court of Lee County where he entered a guilty plea. The full circumstances of Woodson's illegal confinement, confession, and agreement to plead guilty were brought to the attention of the District Court. The colloquy which took place between the District Judge and Woodson is reported in detail in both decisions of the Iowa Supreme Court and in two unpublished orders and opinions of the United States District Court for the Southern District of Iowa. At the time of his plea, Woodson was a mature adult of normal intelligence. He had prior experience with the courts and was represented by competent counsel.

In denying a certificate of probable cause, we specifically found Woodson's plea to be voluntary. We stated:

" * * * [W]e think [this situation is] extraordinary in the care and concern which was manifested and engaged in by the state trial court as to its consenting to a reduction in the charge from first to second-degree murder, and as to its accepting a plea of guilty by petitioner on that basis. The court solicitiously pointed out to petitioner that he had improperly been held in jail for 'approximately two months after a time when you would have been entitled to a preliminary hearing', during which period he had given a confession, and emphasized to him that 'the state of Iowa * * * probably could not convict you of the crime of which you are charged either in first or second-degree were it not for your confession or unless you confessed'.

"This was a matter of such clear and specific dialogue between the court and petitioner and of such indicated establishment of contact and communication between them as hardly credibly to leave basis for a claim on the part of petitioner that he was without intelligent understanding and undominated will in what he did. The court, however, went on to pursue the matter further. It made express inquiry of petitioner whether 'after having been advised that * * * you have not been given your full legal rights as the Court sees it (undue holding in jail before preliminary hearing) you

still now want to reaffirm everything that is in that confession.' Nothwithstanding petitioner's answer of 'Yes, sir', the Court sought to make penetration of the circumstances by interrogation as to whether there had been any 'threats or promises or anything of that nature made to you', to which petitioner answered 'No, sir'. Beyond this, petitioner additionally made direct affirmation as to the plea of guilty which he was entering that the only thing that had been promised him in this regard was that the charge would be reduced from first degree to second-degree murder. In further effort to satisfy itself fully, the court put the question to petitioner of whether, assuming that it probably would not be possible to convict him without a confession by him, 'do you still want to make that confession?' to which he answered 'Yes, sir'. And finally when the court inquired 'you, yourself enter a plea of guilty?' and 'Do you have anything to say to the Court before sentence is pronounced?', petitioner intelligently responded, 'I am sorry it happened; I didn't mean it'."

2. While the federal courts have held confessions inadmissible in federal courts if they are secured while the *defendant is held without prompt arraignment* see generally, Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), such exclusion has been based not upon constitutional considerations, but upon adherence to Rule 5(a) of the Federal Rules of Criminal Procedure, 18 U.S.C. Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); Van Ermen v. Burke, 398 F.2d 329 (7th Cir.), cert. denied, 393 U.S. 1004, 89 S.Ct. 494, 21 L.Ed.2d 468 (1968). The rule has never been extended to the states. Ralph v. Pepersack, 335 F.2d 128 (4th Cir. 1964), cert. denied, 380 U.S. 925, 85 S.Ct. 907, 13 L.Ed.2d 811 (1965).

Under Iowa law, Woodson should have been taken before a magistrate on the murder charge "without unnecessary delay." Iowa Code §§ 757.2, 757.7. The failure of the state to follow its own procedure was recognized by the sentencing court, and the *appellant was questioned about the effect of this delay*

Woodson v. Bennett, Misc. No. 289 (8th Cir. May 7, 1965) (Unpublished.)

 When this matter was before us in Misc. No. 289, Woodson had not been given an evidentiary hearing in either his state or federal post-conviction proceedings. Woodson has since received an evidentiary hearing on his contentions. It is clear that Woodson was held without arraignment in violation of state statute, and that he was questioned several times during his detention without his lawyer being present. We believe that the record fairly establishes that the County Prosecutor bargained a plea directly with Woodson, not through Hollingsworth. While we do not countenance these procedures,[2] we are convinced that the District Court's denial of the writ of habeas corpus was proper. The state trial court discussed these faulty procedures with Woodson before accepting his plea. Each of these procedural defects was known to this Court at the time we entered our prior order denying a certificate of probable cause. Since the evidentiary hearing did not establish any new evidence bearing on the issue of the voluntariness of Woodson's confession and plea, and since the appli-

on his plea. While we are as disturbed about the state's procedure as were the *state court and the United States District Court*, we believe the record negates a finding that the delay affected the voluntariness of Woodson's guilty plea.

The safeguards of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966), now help to protect defendants from questioning by police in the absence of counsel. These cases are not retroactive, however, Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), and they were decided long after the 1952 confession involved here.

Rules governing plea bargaining are not clearly defined. But we think it is improper to bargain a plea directly with a defendant who is represented by counsel. See, American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft, 1968), at 60.

cable law remains the same, we see no reason to alter our prior determination that Woodson's plea was voluntary.

The sole remaining contention is that another person, John Riley, Jr., confessed to the murder of Juhl, and that the existence of this confession requires granting the writ of habeas corpus. This matter was raised for the first time in the present application for habeas corpus; thus we did not consider it before in our order denying a certificate of probable cause.

■ Evidence in the form of a confession by another goes to the merits of the conviction, not its constitutionality. Shaver v. Ellis, 255 F.2d 509 (5th Cir. 1958); Kelly v. Ragen, 129 F.2d 811 (7th Cir. 1942). Under Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963), such evidence is not grounds for federal habeas corpus relief. See also, Shaver v. Ellis, *supra;* Kelly v. Ragen, *supra.*

The judgment of the District Court is affirmed.