RAWLS, Chief Judge
(dissenting).
At approximately 9:30 a. m. on August 7, 1972, two police officers took this 17-year old defendant into custody and transported him in a patrol car to the “homicide” office in the courthouse for the purpose of interrogation. A confession was extracted from defendant around 8:30 p. m. that evening. The trial judge, after hearing extensive testimony concerning the voluntariness of defendant’s confession, entered the order appealed suppressing the subject confession. Salient portions of the trial judge’s order are as follows:
“8. At approximately 10:30 A.M., the officers advised the defendant of his constitutional rights under the Miranda decision, and the defendant signed a card which was introduced into evidence setting forth his constitutional rights. The officers interrogated the defendant about the body, and at the suggestion of the officers and with the consent of the defendant, polygraph examination was administered at approximately 12:00 noon on August 7th, 1972. After the polygraph operator reported his findings to the Homicide officers at approximately 2:00 or 2:30 P.M., the defendant was subjected to further interrogation concerning his involvement in the death of the woman. The defendant denied any participation in the death of the woman.
“9. Intermittant questioning continued until approximately 8:30 P.M., when the defendant at that time made a statement that was reduced to writing.
“10. At no time during the entire interrogation was the defendant advised that he could leave at any time that he wished, and on occasion was fed cola and crackers and was also permitted to use the bathroom.
“11. That the State announced its intention to introduce said statement into evidence in the trial of this case which by its motion the defendant has sought to suppress.
“Based upon the preceding findings of fact, it is ordered that the statement sought to be introduced in this case is found to be inadmissible as evidence at the trial of this cause because it was not freely and voluntarily given, and is hereby suppressed.”
One of the police officers testified that around 2:00 or 2:30 p. m., defendant became a prime suspect when he “flunked” the polygraph test which had been given to him two or more times. This officer further testified that he nor any other officer informed the defendant that he had a right to go before a judge. In response to the Court’s inquiry as to why defendant was not placed under arrest after he “flunked” the polygraph test and became a prime suspect, this officer stated, “We didn’t place him under arrest until he gave us a statement. It was just that way, the way it happened.”
The majority opinion observes that:
“If the officers had slapped the defendant around a few times, they probably could have obtained a confession in a much shorter time, but this they did not do, but followed the legal and right method to reach the same result.
******
“The criminal element should not at all times be given all the technical advantages at the expense of the law enforcement . . .
*470 Technical advantages are oftentimes characterized as a sound legal position which conflicts with the views of one who resorts to the label of “technicality”. As stated by Mr. Justice Drew in a dissenting opinion in Dawson v. State,[1] which statement was unanimously adopted by the Supreme Court in State ex rel. Carty v. Purdy,[2] viz:
“The right of a free man to be presented to a sworn judicial officer promptly upon his arrest is not a technical or trivial right. Such rights are the bedrock of our liberties and have grown out of mankind’s experiences over hundreds of years. . . . Every person who can read is familiar with the methods used in some areas of the world to obtain confessions. The methods there used have become commonly known as brainwashing.” [Emphasis supplied.]
Years before other states saw the light, Florida adopted the rule that a judicial confession be proffered to the trial judge to first determine whether it was freely and voluntarily made, and in such proceeding, the trial judge resolves conflicts in evidence. This rule stands despite the fact, that the incriminating statements are made while the accused is under arrest.[3] Psychological coercion may well be as forceful or more forceful in extracting a confession by in-custody interrogation as physical coercion or, in the words of the majority, “[i]f the officers had slapped the defendant around a few times . . . .” The overriding question here presented is may a trial judge find that a confession is involuntary in the factual posture here posed? Apparently, my brethren are of the view that no competent, substantial evidence was adduced before the trial judge to support the order being reviewed. I submit that the factual circumstances here disclosed, viz: the taking into custody by two police officers a 17-year old boy at 9:30 in the morning; transporting him to the courthouse in a patrol car to the “homicide” office; subjecting him to interrogation by the two officers, sometimes together and at other times separately; presenting him to a polygraph examiner for two or more examinations, all of which he “flunked”; and determining around 2:00 or 2:30 p. m. that he is a “prime suspect” support the trial judge’s apparent conclusion that the time had arrived to cease interrogation, charge defendant and take him before a committing magistrate; it then being 2:30 p. m. on a work day and defendant and a committing magistrate both being in the courthouse. It is my further view that the trial judge, upon the record developed, could lawfully find that, under these circumstances, further interrogation that lasted until the night time rendered the confession that was finally extracted as being involuntary. In my view, to hold otherwise, the rule of law must be amended to: A judicial confession must be proffered to an appellate court to determine whether it was freely and voluntarily made.
F.S. § 901.23 F.S.A. mandates an equally cogent reason to uphold the trial judge’s order suppressing the instant confession:
“Duty of officer after arrest without warrant. — A peace officer making an arrest without a warrant shall take the arrested person without unnecessary delay before the most accessible magistrate in the same county and shall make a complaint stating the facts constituting the offense for which the person was arrested.”
The verbiage of the subject statute does not require an exercise in sophistry to comprehend the meaning of simple English words. Was the defendant in the instant case taken before the most accessible magistrate without unnecessary delay ? As related above, around 2:30 p. m. in the *471 Courthouse of Duval County, 'Florida, which is well staffed with committing magistrates, the police officers who had interrogated defendant from 10:30 that morning concluded that he had lied and was a prime suspect of committing a murder. What was the duty imposed upon them under such factual circumstances at that point in time ? I submit that the mandate of the statute clearly dictated that the time had arrived for them to take the arrested person, without any further delay, before the nearest magistrate. But, say the officers, we had not arrested defendant; therefore, we were not required to comply with the cited statute. Poppycock! Such sophistry should not be indulged. Law officers should be the first to obey the law. It is the duty of law enforcement officers to arrest a “prime suspect”. To delay such an arrest until a confession can be wrung out of a “prime suspect” is, in my opinion, a callous disregard of one of the laws that officers have taken an oath to obey. In Oliver v. State,[4] the Supreme Court held :
“We find that the totality of circumstances in these cases manifestly requires nullification of these convictions on account of the failure of local law enforcement officials to comply with Fla.Stat. §§ 901.06 and 901.23, F.S.A. The rationale supporting our decision may be found in the cases of McNabb v. United States, 318 U.S. 332, at 343-344, 63 S.Ct. 608, 87 L.Ed. 819 (1942), and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) . . . . See Jacobs v. State, 248 So.2d 515 (Fla.App.1971), wherein the District Court of Appeal, First District, required a new trial for a defendant who was not brought before a magistrate until long after his arrest.” [Emphasis supplied.]
Analogous to the facts in the instant case is the recent opinion of the Supreme Court in Roberts v. State[5] quashing this Court’s decision. Roberts, supra, concerned a 16-year old minor accused of rape. After a confession was procured from Roberts, the police took him before a juvenile judge in compliance with the provisions of Section 39.03(3), Florida Statutes F.S.A., which provides in part:
“The person taking and retaining a child in custody . . . shall, without delay for the purpose of investigation or any other purpose, deliver the child . to the court . . . .”
After observing that “[i]n view of the explicit mandatory language of Section 39.-03,” the Supreme Court remanded Roberts’s case for a new trial. In view of the explicit mandatory language of F.S. § 901.-23 F.S.A., and in view of the trial judge’s finding of fact, upon competent substantial evidence, that the subject confession was an involuntary one, it is my firm opinion that the instant cause should be affirmed.
I, therefore, dissent.

. Dawson v. State, 139 So.2d 408, 422 (Fla.1962).

. State ex rel. Carty v. Purdy, 240 So.2d 480, 481 (Fla.1970).

. Young v. State, 140 So.2d 97 (Fla.1962).

. Oliver v. State, 250 So.2d 888, 889 (Fla.1971).

. Roberts v. State, Supreme Court Case No. 43,608, Opinion filed October 3, 1973; not yet reported.