**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 91-2891
_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,


                    versus


KAMORUDEEN ADEKUNLE,

                                        Defendant-Appellant.




**CONSOLIDATED WITH**



_____

No. 91-2979
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

SAHEED MASHA,

                                        Defendant-Appellant.



_____

Appeals from the United States District Court
For the Southern District of Texas

_____

( December 23, 1992 )

Before POLITZ, Chief Judge, WISDOM and WIENER, Circuit Judges.

POLITZ, Chief Judge:

These consolidated appeals pose questions about the detention in excess of 100 hours of two suspected alimentary drug smugglers. Kamorudeen Adekunle and Saheed Masha entered conditional pleas of guilty to possession of heroin with intent to distribute. They appeal the denial of motions to suppress evidence of the heroin-filled balloons they ultimately expelled from their bodies and statements made during their detention. For the reasons assigned we affirm both convictions and take this opportunity to announce a prophylactic rule to govern, in the future, instances such as are here presented.


## Background

Masha and Adekunle crossed the border from Matamoras, Mexico to Brownsville, Texas at about 4:00 p.m. Saturday, February 23, 1991. They fit in part the drug courier profile: young men coming from central Mexico with little luggage, giving inconsistent answers about their travel plans, and conferring in their native tongue before responding to questions. They were referred to the secondary inspection station.

Resort to the Treasury Enforcement Computer System revealed the reports of two informants that Masha, a suspected alimentary canal smuggler, probably accompanied by another person, would be attempting to enter the United States. They were not arrested but were given **Miranda** warnings and were strip searched. They held

2

Nigerian passports, were extremely nervous, and had tight, distended stomachs.  Both refused to consent to an x-ray examination of their stomachs.

The two were taken by customs officers to a local hospital. Masha there consented to an x-ray examination which revealed the presence of foreign objects in his intestinal tract.  Adekunle continued to refuse an x-ray.  They were kept in the hospital for observation and in expectation of the normal bodily processes which would confirm or dispel the suspicion of alimentary tract smuggling.  Both demonstrated notable intestinal fortitude, declined all food and drink, and had no bowel movements on Saturday or Sunday.

On Monday, information from the Treasury Enforcement Computer System connected Adekunle to Masha and, upon request, a magistrate judge ordered him to submit to x-rays of his abdomen.  These x-rays disclosed the presence of foreign objects.

Masha and Adekunle continued to resist normal bowel movements. The decision on the administration of laxatives was deferred to the attending physicians, to be based on medical considerations. Customs agents were present and prepared to assist the doctors, as needed, and to observe the results of the bowel movements.  The doctors prescribed laxatives and informed appellants that the medication would be involuntarily administered if refused.  Under these conditions, both took the laxatives.  Starting later Monday evening the pair began excreting balloons containing heroin.  They were arrested but kept in the hospital under monitoring until

Wednesday when all balloons were expelled. On Wednesday evening they were removed to the local jail. They were brought before the magistrate judge the following morning, over 100 hours after the initial detention and more than two days after their arrest. Throughout the period of detention appellants were held incommunicado, being denied access to a telephone or to counsel.

Charged with multiple counts of conspiracy and of importation and possession with intent to distribute heroin, Masha and Adekunle entered conditional guilty pleas to one count of possession with intent to distribute. Both sought to suppress the heroin seized and statements made during the detention. The district court, guided by **United States v. Montoya de Hernandez**,[1] found a reasonable suspicion to support the detention and further found that the period of the detention was the result of appellants' refusal to cooperate with the customs officers and their very disciplined control of normal bodily functions. Finding no constitutional violations, the district court denied the motions to suppress. Appellants timely appealed and we consolidated their appeals.

## Analysis

In reviewing rulings on motions to suppress we accept trial court factual findings unless clearly erroneous,[2] but review

---

[1]    473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985).

[2]    **United States v. Simmons**, 918 F.2d 476 (5th Cir. 1990).

4

questions of law *de novo*.[3]

## The Strip Search and Detention

A. Masha

A strip search conducted at the border passes fourth amendment muster if it is supported by "reasonable suspicion."[4]  Given the diminished expectation of privacy at our borders, a detention satisfies the fourth amendment if the border agent's reasonable suspicion is based upon a "particularized and objective basis for suspecting the particular person" of alimentary canal smuggling.[5]

Masha contends that the government did not have reasonable suspicion to warrant his detention and strip search.  He relies heavily on statistics offered at the suppression hearing that approximately 800 strip searches at the border had yielded only one case of ingested contraband.  The government counters that the evidence supporting reasonable suspicion in this case far exceeds that found sufficient by the Supreme Court in **Montoya de Hernandez**. Therein a 16-hour incommunicado detention of a suspected alimentary smuggler was deemed reasonable because she:  arrived in Los Angeles from Bogota, Colombia with a passport showing multiple recent trips from Colombia to Los Angeles and Miami; was unable to speak English

---

[3]  **United States v. Castaneda**, 951 F.2d 44 (5th Cir. 1992).

[4]  **United States v. De Gutierrez**, 667 F.2d 16 (5th Cir. 1982).

[5]  **Montoya de Hernandez**, 473 U.S. at 541-42.

and had no friends or relatives here; claimed to be on a shopping trip for her husband's store but had no appointments or firm plans to meet with merchants; carried $5000 in cash; had no hotel reservations; and carried nearly empty luggage. The strip search revealed a firm abdomen.

The district court made the following relevant findings supportive of the customs agent's reasonable suspicion that Masha was an alimentary canal smuggler: (1) he carried a passport from Nigeria, a known narcotics source country;[6] (2) he came from central Mexico with negligible luggage; (3) he and his traveling companion were extremely nervous and conferred in their native tongue before responding to the agent's questions; and (4) two informants had alerted authorities about Masha and possible internal body smuggling of contraband accompanied by another. These factors provided a reasonable suspicion justifying a border strip search.[7] Assuming the validity of the evidence of the 800 or so fruitless searches, those numbers are alarming and very distressing, but that evidence is not dispositive in the case at bar because of the facts found by the trial court.

The strip search revealed that Masha's stomach was firm and distended, a finding consistent with alimentary canal smuggling.

---

[6] See **United States v. Esieke**, 940 F.2d 29 (2d Cir.), cert. denied, 112 S.Ct. 610 (1991).

[7] See **De Gutierrez**, 667 F.2d at 19 (resemblance to drug courier profile is factor which may be considered in reasonable suspicion determination).

The agents were justified in detaining Masha for a reasonable period during which normal bodily functions would be expected to confirm or allay their suspicions.

We must now determine whether the period of the detention during which Masha was not allowed contact with anyone other than the agents and hospital personnel violated the fourth amendment. It was over 48 hours before the first heroin-filled balloon was passed. In **Montoya de Hernandez** the defendant refused an x-ray and was detained only 16 hours awaiting a bowel movement. The Supreme Court held that "detention for the period necessary to either verify or dispel the suspicion was not unreasonable."[8] The Court also made clear that delay attributable to a suspect's "heroic" efforts to resist natural bodily functions is to be put in perspective and not counted in the equation as a negative against the government.[9] Our colleagues in the Second and Eighth Circuits[10] have permitted detentions at the border for extended periods made necessary by a detainee's remarkable control of bodily functions.

The case at bar differs in that Masha consented to an x-ray which demonstrated the foreign substances in his body. Masha was detained thereafter for an additional 40 hours before he had a

---

[8]     473 U.S. at 544.

[9]     **Id.** at 543.

[10]     **Esieke**, 940 F.2d at 35; see **United States v. Odofin**, 929 F.2d 56 (2d Cir.), cert. denied, 112 S.Ct. 154 (1991); **United States v. Oyekan**, 786 F.2d 832, 836 (8th Cir. 1986).

bowel movement expelling some of the balloons.  The district court found that Masha was properly detained until his bodily functions confirmed the presence of contraband, and that he contributed to the delay by refusing all food, drink, or laxatives during that period.  We agree.

B.  Adekunle

Adekunle, on the other hand, does not dispute that customs officials had reasonable suspicion to detain him as a suspected alimentary canal drug smuggler.  He argues, rather, that once reasonable suspicion ripened into probable cause he was no longer a subject in investigatory detention governed by the rule of **Montoya de Hernandez**, but was under arrest.

Rule 5(a) of the Federal Rules of Criminal Procedure requires that after a defendant is arrested he must be taken before a federal magistrate without unnecessary delay.  Further, the fourth amendment requires a prompt determination of probable cause following a warrantless arrest.[11]  Failure to provide such a determination within 48 hours shifts the burden to the government to demonstrate a *bona fide* emergency or extraordinary circumstances justifying the lengthier delay.[12]

Adekunle argues that the government's investigative detention ripened into an arrest supported by probable cause when an x-ray

---

[11]    **Gerstein v. Pugh**, 420 U.S. 103 (1975).

[12]    **County of Riverside v. McLaughlin**, 114 L.Ed.2d49 (1991).

8

exposed that his companion, Masha, was carrying suspected substances in his alimentary canal. Adekunle was not formally arrested, however, until two days later, after he began passing heroin-filled balloons. He was brought before a magistrate judge Thursday morning, about 60 hours after his arrest. He contends that the failure of prompt presentation before a magistrate judge requires the suppression of any incriminating statements made during the period of detention.[13]

Adekunle's contention must be rejected out-of-hand. Acceptance of this proposition would result in the absurdity that one could have his liberty restrained for a longer period based on a mere reasonable suspicion than he lawfully could be detained based on probable cause. In the case at bar the delay was occasioned by appellants' refusal to cooperate with the authorities and their initial nigh-remarkable ability to control their bodily functions. This was coupled with the medical need to monitor them until the potentially toxic substances, in death-dealing quantities, were safely expelled from their bodies. We conclude that the delay in bringing him before the magistrate judge was justified.


C. The X-Ray

Masha also contends that x-rays were intrusive searches which

---

[13] **Mallory v. United States**, 354 U.S. 449, 453 (1957).

required more than reasonable suspicion. **Montoya de Hernandez** did not articulate the level of suspicion required for non-routine border searches, such as x-rays.[14] We have upheld the x-ray of a suspected alimentary canal smuggler based upon reasonable suspicion and with the suspect's consent.[15] Masha does not challenge his consent to the x-ray; therefore, reasonable suspicion was sufficient.[16]

D.  The Administration of Laxatives

Finally, the appellants maintain that they were forced to take laxatives in violation of their fourth amendment privacy expectations and their due process rights.[17] They rely on **Rochin v. California**[18] wherein the Court found that forcing an emetic into

---

[14]     473 U.S. at 541 n.4.

[15]     **United States v. Mejia**, 720 F.2d 1378 (5th Cir. 1983).

[16]     Although at the suppression hearing Masha contended that he did not consent to the x-ray, his brief on appeal does not raise this argument.

[17]     Masha also contends that the evidence of heroin-filled balloons was obtained in violation of his fifth amendment privilege against self-incrimination. This argument is without merit. The fifth amendment protection against self-incrimination is limited to testimonial evidence. **Schmerber v. California**, 384 U.S. 757 (1966); **United States v. Brown**, 920 F.2d 1212 (5th Cir.), cert. denied, 111 S.Ct. 2034 (1991). The forced administration of laxatives may have advanced the production of incriminating evidence, but it did not compel testimony.

[18]     342 U.S. 165 (1952).

the defendant's stomach to induce the vomiting of evidence shocked the conscience and violated due process. Appellants insist that administering laxatives to expedite the normal expulsion of evidence is no less shocking. In addition, they argue that, at a minimum, a prior judicial determination of probable cause and the reasonableness of such an intrusion was necessary.[19] In **Winston** the Court noted the importance of an "informed, detached and deliberate determination of the issue whether or not to invade another's body."[20]

Because the government was entitled to detain the appellants until they had a bowel movement, the administration of laxatives at the direction of physicians was not unreasonable. The district court found that the laxatives were given for reasonable medical purposes. Masha and Adekunle were at significant risk of serious injury or death if the balloons allowed the escape of large quantities of toxic substances into their systems. It was not unreasonable for the customs agents to defer to the attending physicians the decision on the appropriate medical attention indicated during the detention period.[21]

---

[19] See **Winston v. Lee**, 470 U.S. 753 (1985).

[20] **Id.** at 760-61 (surgical removal of a bullet from the accused's chest, even with probable cause, unreasonably violated the accused's rights).

[21] The laxatives advanced the process, but unlike the situation in **Winston** or **Rochin**, they did not cause the expulsion from the body of something which would not normally and routinely be expelled.

11

We affirm the convictions, but not without grave reservations caused by the conduct of the customs agents. They detained appellants, keeping them out of contact with any but those in their immediate environment, for over 100 hours. In **Montoya de Hernandez** the Supreme Court viewed the 16-hour detention at issue therein as one which exceeded any detention they previously had approved. We are mindful that **Montoya de Hernandez** has been cited for authority to justify far longer detentions.[22] But we cannot accept without active response the circumstances of the instant detentions, particularly their total incommunicado character. Thus the following rule is to apply to all governmental agents and agencies which hereafter might detain a suspected alimentary canal smuggler in this circuit. Henceforth, all agencies and agents shall notify the local United States Attorney within 24 hours of the detaining of such a suspected smuggler. The United States Attorney shall, in turn, immediately notify a district or magistrate judge with jurisdiction and the detainee's attorney or local public defender or counsel appointed by the court.[23] In addition, the United States Attorney shall make a daily report to the court until the detention is terminated or the person is brought before the court pursuant to

---

[22]    **Odofin**, 929 F.2d 56 (24 days before bowel movement); **United States v. Onumonu**, 967 F.2d 782 (2d Cir. 1992) four days before bowel movement; six days total); **Esieke**, 940 F.2d 29 (one and one-half days before bowel movement; three days total); **United States v. Onyema**, 766 F.Supp. 76 (E.D.N.Y. 1991) (19 hours before bowel movement; 78 hours total); **United States v. Yakubu**, 936 F.2d 936 (7th Cir. 1991) (18 hours before bowel movement).

[23]    See **Esieke**, 940 F.2d at 36.

charges.

The convictions of Masha and Adekunle are AFFIRMED.