**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 91-2891

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KAMORUDEEN ADEKUNLE,

Defendant-Appellant.

_____

No. 91-2979
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SAHEED MASHA,

Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Texas

OPINION ON REHEARING

(Opinion December 23, 5th Cir., 1992 _____ F.2d _____)

September 9, 1993

Before POLITZ, Chief Judge, WISDOM and WIENER, Circuit Judges.

POLITZ, Chief Judge:

Treating the Suggestion for Rehearing En Banc as a petition for panel hearing, it is ordered that the petition for panel rehearing is GRANTED. Our prior opinion, reported at 980 F.2d 985 (5th Cir. 1992), cert. denied, 113 S.Ct. 2380 and 2455 (1993), is revised and as revised is reinstated. Section B, 980 F.2d at 989, and the final paragraph, 980 F.2d at 990, of the prior opinion are vacated and replaced.

Again we consider the issues posed by the detention in excess of 100 hours of suspected alimentary canal drug smugglers. The issue addressed in this opinion was raised only by appellant Kamorudeen Adekunle. The facts underlying this appeal are set out more fully in the prior panel opinion. Adekunle and a companion, Saheed Masha, were detained by customs officials in Brownsville, Texas as suspected alimentary canal drug smugglers. They were taken to a hospital for observation and, pursuant to a magistrate judge's order, Adekunle was subjected to an x-ray. After attending physicians administered laxatives, both Adekunle and Masha excreted numerous balloons containing heroin and were then arrested. Following expulsion of all the balloons, they were removed to the local jail and finally presented before the magistrate judge, over 100 hours after the initial detention and more than two days after their arrest.

A detention at the border satisfies the fourth amendment if supported by a customs official's reasonable suspicion based upon

2

a "'particularized and objective basis for suspecting the particular person' of alimentary canal smuggling."[1] Adekunle does not dispute that customs officials had reasonable suspicion to detain him as a suspected alimentary canal drug smuggler. Rather, he maintains that once reasonable suspicion ripened into probable cause, he no longer was a subject in investigatory detention but was under arrest. He therefore contends that the customs officials failed timely to provide him with the procedural protections required for warrantless arrests, and that such failure requires suppression of any statements made during the period of detention.[2]

The fourth amendment requires a prompt determination of probable cause following a warrantless arrest.[3] Failure to provide such a determination within 48 hours shifts the burden to the government to demonstrate a *bona fide* emergency or extraordinary circumstance justifying the lengthier delay.[4]

Because it was based on reasonable suspicion, Adekunle's detention was justified at its inception.[5] He argues, however, that as the customs officers discovered more information, their reasonable suspicion ripened into probable cause requiring that he

---

[1] **United States v. Montoya de Hernandez**, 473 U.S. 531, 541-42, 105 S.Ct. 3304, 3310-11, 87 L.Ed.2d 381 (1985) (quoting **United States v. Cortez**, 449 U.S. 411, 417 (1981)).

[2] See **Mallory v. United States**, 354 U.S. 449, 453 (1957).

[3] **Gerstein v. Pugh**, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

[4] **County of Riverside v. McLaughlin**, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).

[5] **Montoya de Hernandez**, 473 U.S. at 541.

be put under arrest rather than kept in investigative detention. A defendant has no constitutional right to be arrested at the point when either he or the court deems that there is sufficient probable cause for arrest.[6] Law enforcement officials are "not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect."[7] Such a requirement would punish the cautious officer who errs on the side of protecting a defendant's rights by requiring a stronger showing of probable cause than the court might deem necessary.

We cannot, however, countenance the absurdity that one may have his liberty restrained for a longer period based on a mere suspicion than he lawfully could be detained based on probable cause. The same evils which the fourth amendment protects against by requiring a probable cause hearing within 48 hours of a warrantless arrest exist for a suspect in investigative detention for an extended period. Prolonged detention may have serious consequences to a defendant, whether the defendant is arrested or is merely in investigative detention. Such "confinement may imperil the suspect's job, interrupt his source of income, and

---

[6] **United States v. Hoffa**, 385 U.S. 293 (1966).

[7] 385 U.S. at 310. An encounter which begins as a permissible **Terry** stop, however, may ripen into an arrest requiring probable cause if the officer uses means of detention which are more intrusive than necessary SQ thus, the officer's conduct determines the level of suspicion required. See, e.g., **United States v. Martinez-Perez**, 941 F.2d 295 (5th Cir.), cert. denied, 112 S.Ct. 1295 (1991). Adekunle's argument, on the other hand, is circular SQ the officer's actual level of suspicion determines the level of suspicion required. This fails to persuade.

4

impair his family relationships."[8]

While the same grave consequences are at stake in prolonged detentions following arrest or for investigation, the justification for permitting detentions based only on a law enforcement official's reasonable suspicion diminishes with the length of the detention.  The reasonable suspicion standard "effects a needed balance between private and public interests when law enforcement officials must make a <u>limited intrusion</u> on less than probable cause."[9]  When an investigative detention extends beyond 48 hours, it no longer is a limited intrusion.  As the detention becomes more prolonged, the "calculus of interests" shifts from the government to the person in custody.[10]  If the fourth amendment is to have any meaning, it must require a judicial determination that there is a basis SQ under the applicable standard SQ for any extended restraint of liberty.  As the Supreme Court has observed:

> The point of the Fourth Amendment . . . is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence.  Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.[11]

We hold that under basic fourth amendment principles, the

---

[8]  **Gerstein**, 420 U.S. at 114.  "When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty."  **Id**.

[9]  **Montoya de Hernandez**, 473 U.S. at 541 (emphasis added).

[10]  **Hallstrom v. City of Garden City**, 991 F.2d 1473, 1481 (9th Cir. 1993) (citing **Gerstein**).

[11]  **Johnson v. United States**, 333 U.S. 10, 13-14 (1948).

government, after detaining a suspected alimentary canal drug smuggler, must seek a judicial determination, within a reasonable period, that reasonable suspicion exists to support the detention. The fourth amendment does not require a formal adversary hearing for such a determination; informal presentation of the evidence supporting the customs agent's suspicion before a neutral and detached judicial officer satisfies the concerns underlying the fourth amendment.[12] Failure to obtain such a judicial determination within 48 hours shifts the burden to the government to demonstrate a *bona fide* emergency or extraordinary circumstance justifying the lengthier delay.[13]

Today's holding is consistent with **Montoya de Hernandez**'s teachings that "detention for the period necessary to either verify or dispel the suspicion [is] not unreasonable."[14] In **Montoya de Hernandez** the Supreme Court viewed the 16-hour detention at issue therein as one which exceeded any detention it previously had approved.[15] The Court left open the possibility that the balance

---

[12] **Gerstein**, 420 U.S. at 120-21.

[13] See **County of Riverside**.

[14] 473 U.S. at 544.

[15] We note that **Montoya de Hernandez** has been cited as authority to justify far longer detentions. See **United States v. Odofin**, 929 F.2d 56 (2d Cir.) (24 days before bowel movement), cert. denied, 112 S.Ct. 154 (1991); **United States v. Onumonu**, 967 F.2d 782 (2d Cir. 1992) (four days before bowel movement; six days total); **United States v. Esieke**, 940 F.2d 29 (2d Cir.) (one and one-half days before bowel movement; three days total), cert. denied, 112 S.Ct. 610 (1991); **United States v. Onyema**, 766 F.Supp. 76 (E.D.N.Y. 1991) (19 hours before bowel movement; 78 hours total); **United States v. Yakubu**, 936 F.2d 936 (7th Cir. 1991) (18 hours before bowel movement).

of fourth amendment interests may shift with the increase in the duration of the detention.

Adekunle's detention passes constitutional muster under the standard announced herein because within 48 hours customs officials brought the matter before a magistrate judge who ordered an x-ray. This order demonstrated an implicit determination that there was reasonable suspicion to warrant the continued detention. Accordingly, his conviction must be AFFIRMED.  For the reasons cited in the prior panel opinion, the conviction of Saheed Masha is also AFFIRMED.