USCA1 Opinion

 

 June 30, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1322 UNITED STATES, Appellee, v. DAVID A. FORDE, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Selya, Boudin and Stahl, Circuit Judges. ______________ ____________________ David A. Forde on brief pro se. ______________ Guillermo Gil, United States Attorney, Esther Castro-Schmidt, ______________ ______________________ Assistant United States Attorney, and Jose A. Quiles-Espinosa, Senior _______________________ Litigation Counsel, on brief for appellee. ____________________ ____________________ Per Curiam. In Gerstein v. Pugh, 420 U.S. 103 (1975), __________ ________ ____ the Court held that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to extended detention following a warrantless arrest. In County ______ of Riverside v. McLaughlin, 500 U.S. 44 (1991), the Court ____________ __________ established that "prompt" generally means within 48 hours of the warrantless arrest. Absent extraordinary circumstances (and intervening weekends do not qualify as such), a longer delay presumptively violates the Fourth Amendment. Id. at ___ 57. In Powell v. Nevada, 114 S. Ct. 1280 (1994), the Court ______ ______ held that McLaughlin applied retroactively to all cases __________ pending on direct review or not yet final. The Court left open the issue of the appropriate remedy for an unreasonable delay in determining probable cause. Powell v. Nevada, 114 ______ ______ S. Ct. at 1283-84. David Forde, appellant before this court, contends that the appropriate remedy, in his case, is suppression of evidence. But, no evidence was obtained during the period that Forde was detained after his arrest and prior to his indictment. We affirm Forde's conviction. I. Forde arrived at the Luis Munoz Marin International Airport in Puerto Rico on Friday, January 3, 1992, at approximately 7:00 p.m. He was in transit from Barbados to Boston, Massachusetts. United States Customs Inspector Jose M. Martinez' attention was drawn to Forde because Forde was "skinny" but was wearing a bulky sweater. Martinez testified that he was in uniform when he first encountered Forde. He further testified that Forde appeared surprised and nervous when he saw that Martinez was staring at him and that Forde tried to avoid him. At that moment, Martinez was called by radio to his supervisor's office. Martinez pointed out Forde to fellow Customs Inspector Hector Caban, who was in plain clothes. Martinez told Caban of Forde's nervousness. Caban waited until Forde retrieved his luggage. Then Caban identified himself to Forde and asked him to go to a separate inspection area. There, Caban requested Forde's ticket and passport, which Forde gave him, and asked Forde routine questions. According to Caban, Forde appeared nervous, moving from side to side, and averted his eyes from Caban, while answering these questions. Caban inspected Forde's luggage and found nothing suspicious. Caban then proceeded to conduct a personal search of Forde. By this time, Martinez had returned. During the patdown, Martinez noticed the thick soles of Forde's shoes. He had Forde remove them and noticed traces of glue in the sole area and nails in the inside of the shoe. Martinez probed the soles with a screwdriver. The white powder substance therein field-tested positive for cocaine. After ripping off both soles, Martinez found four -3- packages of cocaine, totaling approximately 100 grams, and one package of marihuana, weighing approximately 20 grams. Forde was arrested and informed of his Miranda rights. Forde _______ declined to waive these rights and no further questioning occurred. Nor was any further evidence obtained. At approximately 9:05 p.m., the Customs officials notified the United States Attorney's office of Forde's arrest. That office authorized prosecution. A Pretrial Services officer contacted Magistrate Judge Schmidt-Monge at approximately 1:30 a.m., Saturday, January 4, requesting Forde's temporary commitment. Magistrate Schmidt-Monge ordered the temporary commitment and instructed the arresting agent to bring Forde for further proceedings on the next working day, which was Tuesday, January 7. The district court in Puerto Rico was closed on Monday, January 6, 1992, in observance of Three Kings Day, a Commonwealth holiday. Scheduling the initial appearance for the next working day after an arrest was in accordance with the written procedure in the district.1 ____________________ 1. The record does not disclose the contents of the request for temporary commitment nor the basis for Magistrate Judge Schmidt-Monge's approval. Neither Magistrate Judge Castellanos, before whom Forde was later brought, see infra, ___ _____ text at 5, nor the district court considered what weight, if any, Magistrate Schmidt-Monge's approval of Forde's temporary commitment, approximately 6 hours after his arrest, played in the McLaughlin calculus. The government has never argued __________ that this approval constituted a probable cause determination for McLaughlin purposes. As it appears that everyone __________ heretofore - parties and judicial officers alike - has -4- On January 7, at approximately 10:00 a.m., Forde was charged, by criminal complaint, with possession with intent to distribute, importation, and possession on board an aircraft, arriving in the United States, of approximately 100 grams of cocaine base and 20 grams of marihuana, in violation of 21 U.S.C. 841(a)(1); 952(a); and 955. At that time, Forde appeared before Magistrate Judge Castellanos, who raised concern about the failure to hold a probable cause determination within 48 hours of Forde's arrest. Magistrate Castellanos appointed counsel for Forde and scheduled a hearing for later that afternoon. At that hearing, counsel for Forde argued that McLaughlin required that the evidence be suppressed and the __________ complaint be dismissed with prejudice. The government countered that the sole remedy dictated by McLaughlin, a __________ class action civil rights case, was a suit for declaratory and/or injunctive relief. The government also relied on its compliance with the written procedure in the district. ____________________ assumed that the approval of a temporary commitment until the next working day did not suffice as a probable cause determination, we shall do likewise, without passing on the issue. But cf. United States v. Adekunle, 2 F.3d 559, 562 _______ ______________ ________ (5th Cir. 1993) (concluding that the detention of a suspected alimentary canal drug smuggler for more than four days prior to his appearance before a magistrate was constitutional because, within the first 48 hours of defendant's detention, customs officials presented the matter to a magistrate, who approved an order for an x-ray; opining that that order demonstrated an implicit determination that there was reasonable suspicion to warrant the continued detention). -5- Lastly, the government pointed out that no statements or evidence had been obtained from Forde after his arrest and during the intervening detention period. Magistrate Castellanos ruled that the complaint should be dismissed without prejudice, but he stayed his decision to allow the government to seek review of that determination in the district court. Forde remained incarcerated. On January 8, the government sought review of the dismissal ruling in the district court. Also on January 8, a grand jury issued a five count indictment against Forde, essentially replicating the charges brought in the complaint. Forde was arraigned on the indictment on January 9 and he continued to be detained without bail. On January 10, the district court held a hearing on the government's appeal of Magistrate Castellanos' decision dismissing the complaint. On January 23, the district court ruled that, in light of the intervening indictment, the issue whether McLaughlin required the dismissal of the complaint __________ was moot.2 ____________________ 2. We question, but need not resolve, the correctness of the district court's mootness determination. No doubt the later- obtained indictment superseded the complaint and, in that sense, mooted the question whether to dismiss that complaint. But, we note that Forde had argued that he was entitled to dismissal of the complaint with prejudice. Presumably, he ______________ was contending that the failure to provide him a probable cause determination within 48 hours of his arrest meant that he could not be prosecuted at all, whether by complaint or indictment. -6- On the day before the commencement of trial, Forde's counsel moved to suppress the cocaine and marihuana and to dismiss the indictment with prejudice, again arguing that McLaughlin instructs that the delay in Forde's initial __________ appearance before a magistrate violated the Fourth Amendment. After a hearing, the court denied that motion. It ruled that the search was lawful and, therefore, the controlled substances were admissible. As for the request to dismiss the indictment, the court ruled that that issue had been resolved by its prior ruling of mootness.3 After a four-day jury trial, Forde was convicted on all five counts. He was sentenced to a term of 121 months on each of the three cocaine charges and to a term of 60 months on each of the two marihuana charges, all terms to be served concurrently with each other. He was also sentenced to ____________________ Beyond question, an indictment constitutes a determination of probable cause. The mere fact that an indictment was eventually obtained, however, does not resolve whether a defendant is entitled to relief, and, if so, the contours of that relief, for the failure to provide him with a determination of probable cause within the first 48 hours of his detention. See Arnold v. City of Chicago, 776 F. ___ ______ ________________ Supp. 1259, 1263 (N.D. Ill. 1991) (reciting that a finding of probable cause for arrest does not estop an extended detention claim). Indeed, counsel for Forde made this contention in his subsequent motion to dismiss the indictment, when he argued that the indictment obtained five days after his arrest did not "cure" the prior extended detention. 3. But see note 2, supra. _____ -7- concurrent five and three year terms of supervised release. Forde has appealed and elected to proceed pro se.4 II. It is conceded in this case that Forde was arrested without a warrant and he was detained for more than 48 hours prior to a judicial determination of probable cause. According to McLaughlin, once the 48-hour mark was passed, it __________ is the government's burden to demonstrate that the delay was reasonable due to a bona fide emergency or other extraordinary circumstance. County of Riverside v. _______________________ McLaughlin, 500 U.S. at 57. The government has offered no __________ justification, other than the occurrence of the intervening holiday weekend, and McLaughlin, itself, rejects that __________ justification. See id. ___ ___ ____________________ 4. During the course of pretrial proceedings, counsel for Forde moved to dismiss the indictment with prejudice, on the ground that the delay prior to Forde's appearance before the magistrate violated Fed. R. Crim. P. 5(a). That rule states, in pertinent part, that "any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate judge." The court denied the motion. Forde has not repeated the contention on appeal. In any event, we have previously determined that Rule 5(a) does not require suppression of evidence lawfully obtained prior to any period of unnecessary delay. United States v. Elkins, 774 F.2d 530, 534 (1st Cir. _____________ ______ 1985). This caselaw supports the result in this case. Prior to trial, Forde also filed a pro se motion to dismiss the indictment and a pro se petition for habeas corpus, each citing McLaughlin. The record does not evidence __________ any express ruling by the district court on either filing. In light of our disposition of this appeal, that lacuna is of no matter. -8- We are aware that the Court has left open the issue of the appropriate remedy for a McLaughlin violation. Powell v. __________ ______ Nevada, 114 S. Ct. at 1283-84. We are confident of the ______ correct result in this case, nonetheless. Even conceding the unlawfulness of Forde's extended detention prior to the probable cause determination, it does not follow that, as Forde would have it, the evidence of the controlled substances must be suppressed.5 In this case, the contraband was obtained from a lawful search.6 And, that ____________________ 5. Although Forde has limited his appellate argument to advocating suppression, we recognize that, in effect, he is seeking the dismissal of his indictment. Even granting this interpretative largess to Forde's pro se filing, we would nonetheless affirm. "Once a defendant has been tried and convicted, delay in bringing him before a magistrate is not reason to set aside the conviction unless the defendant can show that he was prejudiced by the delay." United States v. _____________ Perez-Bustamante, 963 F.2d 48, 52 (5th Cir.) (citations ________________ omitted) (declining to suppress a voluntary confession obtained 60 hours after an arrest and two days prior to presentment to a magistrate where there was no evidence that the delay was for the purpose of interrogation or that the interrogation was lengthy, hostile, or coercive), cert. _____ denied, 113 S. Ct. 663 (1992); see also United States v. ______ _________ ______________ Jernigan, 582 F.2d 1211, 1214 (9th Cir.) (declining to vacate ________ a conviction and dismiss an indictment despite evidence that the DEA agent deliberately delayed arresting the defendant until the evening preceding a long holiday weekend; no statements were made by defendant during that period), cert. _____ denied, 439 U.S. 991 (1978). ______ 6. Although Forde contends, in a passing reference, that the search was unlawful, that is clearly not so. "It is well established that routine border inspections do not violate the Fourth Amendment prohibition against unreasonable searches even when conducted without a warrant or probable cause." United States v. Uricoechea-Casallas, 946 F.2d 162, _____________ ___________________ 164 (1st Cir. 1991). "Under the 'no suspicion' standard applicable to routine border searches, a customs officer may search an individual based on 'subjective suspicion alone, or -9- search was not conducted during any period of unlawful detention. Simply put, the evidence was not the product of any unlawful detention. That, at some later point, the length of his detention violated the Fourth Amendment does not retroactively invalidate the prior lawful search or taint its results. See United States v. Crews, 445 U.S. 463, 471 ___ _____________ _____ (1980) ("In the typical 'fruit of the poisonous tree' case, ... the challenged evidence was acquired by the police after _____ some initial Fourth Amendment violation.") (Emphasis in the original). We understand Forde's instinctive belief that there must be a remedy for the Fourth Amendment violation which occurred in this case. However, "[t]here is no presumption or general rule that for every duty imposed upon the court or the ____________________ even on random basis.'" Id. at 166 (citations omitted). The ___ patdown search of Forde, including the request that he remove his shoes constituted a routine border search. See, e.g., __________ United States v. Grotke, 702 F.2d 49, 52 (2d Cir. 1983) ______________ ______ (search of cowboy boots was minimally intrusive and did not require reasonable suspicion); United States v. Fitzgibbon, _____________ __________ 576 F.2d 279, 284 (10th Cir.) (same), cert. denied, 439 U.S. ____________ 910 (1978). The thick soles, the traces of glue, and the nails in the inside of the shoes justified the probing and field test. The contraband retrieved from the soles was lawfully obtained. After the drugs were found, Forde was strip-searched. Such a non-routine search requires reasonable suspicion, i.e., "some objective, articulable facts that justify the intrusion as to the particular person and place searched." United States v. Uricoechea-Casallas, 946 F.2d at 166 ______________ ___________________ (citations omitted). Forde complains that the strip search was done without any reasonable suspicion. The discovery of the contraband in Forde's shoes provided the required reasonable suspicion. As noted, supra at 4, no further _____ contraband was discovered. -10- Government and its prosecutors there must exist some corollary punitive sanction for departures or omissions, even if negligent." United States v. Montalvo-Murillo, 495 U.S. _____________ ________________ 711, 717 (1990) (holding that release is not an appropriate remedy for a defendant, otherwise properly detained, when the government fails to comply with the Bail Reform Act's directive to hold a detention hearing upon the defendant's first appearance). We do not commend the violation of the McLaughlin rule that occurred in this case. Like the Court, __________ we leave to another day what remedy, if any, does exist for a McLaughlin violation. In this case, the remedy that Forde __________ propounds, suppression of evidence lawfully obtained prior to any unlawfully-extended detention, is clearly unwarranted. Affirmed. _________ -11-