STATE of Wisconsin,
Plaintiff-Respondent,†

v.

Tomas R. PAYANO-ROMAN,
Defendant-Appellant.

Court of Appeals

*No. 2004AP1029–CR. Submitted on briefs April 5, 2005.
—Decided May 10, 2005.*

**2005 WI App 118**

(Also reported in 701 N.W.2d 72.)

† Petition to review granted 10-3-05.

350

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Timothy A. Provis*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general and *Stephen W. Kleinmaier*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J.    Tomas R. Payano-Roman appeals from a judgment entered after he pled guilty to one count of possession of heroin, contrary to Wis. STAT. § 961.41(3g)(a)2 (2003–04).[1] He claims the trial court erred in denying his motion to suppress. Because there is insufficient evidence in the record to support the trial court's determination that the laxative treatment administered to Payano-Roman was motivated out of medical necessity for his well-being, we reverse.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

---

*See Callaghan's Wisconsin Digest, same topic and section number.

## I. BACKGROUND

¶ 2.   On April 12, 2002, Milwaukee Police Officers Corey Parker and Scott Stiff were conducting surveillance near 1525 West Mitchell Street. They had received a tip from a confidential informant that a person named Mingo was trafficking cocaine and possibly heroin out of a blue Toyota Tercel parked at that location.

¶ 3.   At about 11:30 a.m. on that date, they observed a man walk up to the blue Tercel and crouch into the driver's side of the car. That man was Payano-Roman. The officers approached Payano-Roman. The officers were not dressed in uniform, but did announce that they were police as they approached. When Officer Stiff was about six feet away, he observed Payano-Roman place a plastic baggie containing a white powdery or chunky substance into his mouth. The baggie was approximately the size of half of the top joint of the officer's pinky finger. Payano-Roman began swallowing what he put into his mouth. The officers told him to spit it out, and tried to recover the object, but they were unsuccessful.

¶ 4.   The officers arrested Payano-Roman for possession of a controlled substance, put him on the ground, and handcuffed him. The officers then contacted their supervisor, explained what had happened, and the supervisor indicated he would call an ambulance. An ambulance and a fire truck arrived at the scene. The officers then explained to the EMTs and firemen what had happened. The discussion led to the decision to take Payano-Roman to the hospital. He was placed in the ambulance and conveyed to Froedtert Memorial Hospital. Officer Stiff rode in the ambulance with Payano-Roman and Officer Parker met them there shortly thereafter.

¶ 5. At the hospital, Officer Stiff explained to the medical personnel what had occurred. Payano-Roman was admitted through the emergency room and eventually transferred to a private hospital room. He was handcuffed to the bed. A nurse told the officers that administering a liquid laxative would speed up the process by which things would be passed through his system. A nurse who spoke Spanish, demonstrated to Payano-Roman (who did not speak English), how to drink the liquid laxative. Starting at approximately 6:00 p.m., Payano-Roman had to drink the laxative every twenty to thirty minutes. If a nurse was present, the nurse would give the laxative to Payano-Roman and, if not, then Officer Parker, who spoke Spanish, would give Payano-Roman the cup of laxative, telling him "here you go, you got to take this again." This occurred, according to Officer Parker's testimony, about six times.

¶ 6. The officers advised the hospital personnel that they wanted to examine Payano-Roman's stool. The hospital provided a portable toilet at his bedside for that purpose. Payano-Roman was told by the officers that he must use the portable toilet for defecation. At approximately 4:00 a.m., an officer recovered a baggie from Payano-Roman's stool. The contents in the baggie were later tested and determined to be heroin.

¶ 7. Payano-Roman filed a motion seeking to suppress the evidence based on a violation of the Fourth Amendment. He argued that the forced administration of laxatives constituted an unreasonable search. The trial court ruled that Payano-Roman's Fourth Amendment rights were not violated because the officers were not involved in determining the need for the administration of medical treatment. The trial court determined that the medical personnel administered the

laxatives solely out of concern for Payano-Roman's health—that the plastic bag could break, causing a drug overdose. The trial court ruled that medical personnel acted independently of the police and "they prudently, in my humble opinion, gave him something to get it out of his system so that there could not be a problem with respect to overdose, not knowing the exact extent or the volume of heroin that the Defendant ingested." The record does not support the trial court's determination. Accordingly, we must reverse the judgment and remand the matter to the trial court with directions to grant Payano-Roman's order seeking suppression.

## II. DISCUSSION

¶ 8. The Fourth Amendment "prohibits searches and seizures that are 'unreasonable' " *California v. Acevedo*, 500 U.S. 565, 581 (1991) (Scalia, J., concurring). Even if a search is authorized by warrant or other exceptions, it still may violate the Fourth Amendment if it is found to be *unreasonable. See Wilson v. Arkansas*, 514 U.S. 927, 931 (1995). This case came to us following a denial of a motion to suppress. In that context, our review is mixed. We will not overturn any findings of facts made by the trial court unless they are clearly erroneous. *See State v. Rogers*, 148 Wis. 2d 243, 247, 435 N.W.2d 275 (Ct. App. 1988). We will, however, "independently examine the circumstances of the case to determine whether the constitutional requirements of reasonableness" are satisfied. *State v. Goebel*, 103 Wis. 2d 203, 209, 307 N.W.2d 915 (1981) (citation omitted).

¶ 9. Before addressing reasonableness, however, we must review the threshold issue, which was disposi-

tive for the trial court—whether the administration of the laxatives was a private action or a state action. The trial court concluded that such action was private and therefore the Fourth Amendment did not apply. We disagree with that determination.

¶ 10. For a search to be a private action not covered by the Fourth Amendment: "(1) the police may not initiate, encourage or participate in the private entity's search; (2) the private entity must engage in the activity to further its own ends or purpose; and (3) the private entity must not conduct the search for the purpose of assisting governmental efforts." *Rogers*, 148 Wis. 2d at 246–47. Here, Officer Parker admitted that he administered the laxative six times. That, simply put, is participation. The second and third factors are dependent upon the trial court's ruling that the decision to administer laxatives was done by medical personnel solely out of concern for Payano-Roman's health. If that were the evidence, these factors would support the trial court's ruling. We conclude, however, that the trial court's determination was made without a sufficient basis in the record. There was no testimony from any qualified medical personnel that the procedure was necessary to protect Payano-Roman's health. The only testimony was from the two police officers, who said they were concerned that Payano-Roman could have been harmed by the ingestion of the suspected heroin. The record does not indicate that either officer had any medical expertise. Nor was there any evidence that Payano-Roman was experiencing any physical symptoms to support a legitimate concern for his health.

¶ 11. Without this medical evidence, the record suggests that the only reason to administer the laxa-

tives was to recover the evidence. Under these circumstances, there can be but one reasonable conclusion—that the medical personnel acted as agents on behalf of the police. With no evidence of medical necessity that accelerating the excretion of the suspected heroin was for the health or welfare of Payano-Roman, the only logical conclusion was that the administration of laxatives was done to assist the police in recovering the suspected heroin. Because we have concluded that the search was a state action covered by the Fourth Amendment, we must now address whether the search was reasonable.

¶ 12. In addressing whether this search was reasonable, we evaluate three factors: (1) the extent to which the procedure may threaten the safety or health of the individual; (2) the extent of the intrusion upon the individual's dignitary interests in personal privacy and bodily integrity; and (3) the community's interest in fairly and accurately determining guilt or innocence. *Winston v. Lee*, 470 U.S. 753, 761–62 (1985).

¶ 13. As to the first factor, there was no evidence from any medical personnel concerning the risk to Payano-Roman from ingestion of the suspected heroin, nor was there any testimony as to the side effects or health risks associated with ingesting large amounts of laxatives over the course of a twelve-hour period. Because the burden is on the State to justify a warrantless intrusion, the lack of evidence on this factor weighs against the State. *See United States v. Husband*, 226 F.3d 626, 631 (7th Cir. 2000).[2]

_____

[2] The State cites cases which distinguish *Winston v. Lee*, 470 U.S. 753 (1985), such as *United States v. Adekunle*, 980 F.2d 985, 990 (5th Cir. 1992), for the proposition that the search in

¶ 14.   The second factor also weighs against the State. The intrusion required Payano-Roman to defecate in the presence of the officers. It is not disputed that people have a constitutionally protected privacy interest in their bodily integrity. *See Schmerber v. California*, 384 U.S. 757, 772 (1966) ("integrity of an individual's person is a cherished value of our society"). Our society is one in which defecation is a private matter, not often done in the presence of others. The State responds that the medical risk to Payano-Roman was greater than the intrusion on his dignity. Unfortunately, the State failed to proffer at the suppression hearing, qualified medical personnel to attest to its assertion. Accordingly, its argument fails.

¶ 15.   The third and final factor is the community's interest in recovering the illegal drug, and eliminating the danger illegal drug use causes in our society. Payano-Roman argues that the lack of a neutral judicial evaluation of the necessity for a body cavity search or of the means with which this search was carried out, weighs in his favor. The State, again, relies on the argument that the laxatives were administered for the health and safety of Payano-Roman. As previously noted, the State failed to proffer any qualified medical evidence in support of this statement. Thus, we again conclude that the State's argument fails.

¶ 16.   Because we conclude that balancing the required factors tips the scale in favor of Payano-

---

this case was reasonable. The cases relied on by the State, however, all involve border searches. At the United States border, citizens have a diminished expectation of privacy. *See United States v. Montoya de Hernandez*, 473 U.S. 531, 544 (1985). Thus, those cases do not control here. Payano-Roman did not have a diminished expectation of privacy.

Roman, we hold that the search administered in this case was unreasonable and violative of Payano-Roman's Fourth Amendment rights. Accordingly, the judgment is hereby reversed and cause remanded to the trial court with directions to grant the suppression motion.[3]

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[3] The State argues that even if we conclude the search was unreasonable, we should still affirm based on the inevitable discovery doctrine. The State continues that if Payano-Roman had simply been taken to jail, his bowel movements would have been monitored there and the heroin would have been discovered anyway. We are not persuaded. We conclude that inevitable discovery is not applicable here because of the invasion of the body. If we were to rule as the State suggests, there would be no incentive for the police to respect the bodily integrity of persons in custody because they could always argue inevitable discovery.